ANDREW JACKSON *v.* THE STATE.

1. CRIMINAL LAW. *Evidence. Declarations of accused. Newspaper report of interview.*

A witness for the state may read to the jury a newspaper report of an interview formerly had between himself and accused relative to the facts of the alleged offense, where the witness has no independent recollection of what was said, if he knows that it was taken down by him at the time substantially as stated, and published; and he is willing to adopt the report as his testimony; and this, notwithstanding, he cannot affirm that the report is verbally accurate, or that it contains all that the prisoner said. 15 Am. Dec. 194.

2. KILLING FLEEING FELON.

> By the common law, it is lawful to kill a fleeing felon when he cannot be otherwise taken, and the necessity of such killing is a fact for the jury to determine. Our statute, § 2878, code 1880, is merely declaratory of the common law on this subject.

3. INSTRUCTION ON WEIGHT OF EVIDENCE.

> An instruction is erroneous which directs a conviction, if the jury believes certain evidence stated in it, and does not have reference to all the circumstances attending the parties as shown in the evidence.

4. JUSTIFIABLE HOMICIDE.

> In such a case, an instruction that if the jury believe from the evidence that such killing was probably necessary in order to prevent the escape of the fleeing felon, they should acquit, should be granted.

5. SAME. *Evidence.*

> Where the defense is that the killing was justifiable because the deceased was a felon resisting arrest under a warrant, it is proper to exclude all evidence of directions given to defendant at the time the warrant was placed in his hands.

APPEAL from the circuit court of Warren county.

HON. RALPH NORTH, Judge.

Appellant was indicted, jointly with another, for the murder of one Logan Tingstrom. A severance was had and he was tried separately. The proof developed that, at the time of the killing, a charge of grand larceny was pending against Tingstrom, and that Jackson had been specially deputized by the justice of the peace to make the arrest. The evidence for the state showed that Tingstrom and his wife lived on a flat-boat in the river, that late in the evening of the day he was killed, deceased left the boat to go on an errand to a neighboring house, and his wife and her brother waited on the boat for him to return. Shortly after dark he was returning and when in about fourteen steps of them the defendant stepped out from behind the bushes and shot him in the back; that nothing was said at the time and no request to stop or hold up was made of deceased.

The accused testified that after being deputized to arrest Tings–

trom, he kept the warrant several days, but did not see him.   On the evening of the killing he saw deceased at his boat on the river, making preparations to leave, and went down to arrest him.  Seeing him leave the boat for a neighboring house, and knowing he must return a certain way, accused waited for him to. return.   Tingstrom returned after dark, alone, and carrying upon his back a sack and having a gun in his hand.   When near him accused ordered him to " stop, hold up," but he kept on.   Accused then told him, " Hold up, I have a warrant for you," but Tingstrom kept on in a " kind of run."   Accused followed him twenty or twenty-five steps, and when he got in about fourteen steps of the flat-boat said " Stop, or I will shoot you."   Tingstrom took his gun in both hands and looked back and started to turn as if to shoot accused, and the latter thereupon shot him.   There was no ill-feeling between them.

On the trial one H. H. McCaleb was introduced for the state. He testified that he was a reporter for the *Vicksburg Herald*.  That after the killing he had an interview with the defendant, who stated to him voluntarily the circumstances of the homicide.   The interview was written out and read to defendant, who said it was correct. The statement was then published in the *Herald*.   The witness said he had no recollection of what was said in the interview, independently of the article, but did know that he took it down at the time it was said and it was substantially correct.   Thereupon the witness, over the objection of defendant, was permitted to read, as his testimony to the jury, the statement of the interview copied from the files of the *Herald*.

The defendant offered to prove, by one Matt Clay, Jr., who was present when the warrant for the arrest of the deceased was given to Jackson, the defendant, that it was read and explained to him, and he was told what to do under it in reference to the arrest.  The objection of the district attorney to this testimony was sustained, and the defendant excepted.   There was much other testimony, but the foregoing is all that is necessary to an understanding of the opinion of the court.

The court gave the following among other instructions for the state :

1. The court instructs the jury that, if they are satisfied from the evidence in the cause, the defendant, although having a warrant for the arrest of the deceased, that he went upon the bank of the river, having reason to expect the deceased would come by said place, and there the defendant laid in wait for the deceased, and if they are further satisfied from the evidence in the cause that the deceased came along said place where the defendant was in wait, as aforesaid, and that the defendant then and there shot and killed the defendant, merely because the deceased did not stop when the defendant told him to halt, he had a warrant for his arrest, then such killing was unnecessary and wanton, and would be murder in the meaning of the law, and the jury should so find.

2. The court instructs the jury, that if they are satisfied from the evidence that Logan Tingstrom, the deceased, made no actual resistance to his arrest, but merely declined to stop when hailed by the defendant, who called him, and told him he had a warrant for his arrest, and the defendant then and there shot and killed· him, merely because he did not stop, as aforesaid, then such killing was wanton and murder, and the jury should so find.

3. The court instructs the jury, that if they are satisfied from the evidence that the defendant laid in wait for the deceased, and shot and killed him when the deceased's back was to him, and he was in no personal danger to his life or limb, either real or apparent, then they will find him guilty as charged.

4. The court instructs the jury, that no killing of a human being is excusable or justifiable by an officer, or other person having a warrant for the apprehension of a party charged with felony, merely because the party killed is fleeing from arrest.

5. The court instructs the jury that no killing of a human being by a party having a warrant for the arrest of the person killed, would be excusable or justifiable, even if the party who is killed is resisting arrest, if the party killed could be apparently arrested by less violent means.

The court refused the following instructions asked for by the defendant.

15. Should the jury believe from the evidence that the killing, at the time it was done, was probably necessary in order to prevent the escape of the deceased, then they should acquit the defendant.

16. Should the jury from the evidence believe that the deceased

had been guilty of grand larceny, as defined in these instructions,. and that a warrant had been issued for his arrest, and placed in the hands of defendant for execution, that he started out in good faith to execute it, and that he tried to execute it without taking deceased's life; that deceased was trying to escape, and that probably he would have escaped, had he not been slain, then the jury should find the defendant not guilty.

The defendant was convicted and sentenced to be hanged.

*McCabe & Anderson*, for appellant.

The reported interview between defendant and witness, McCaleb, copied from the files of the *Herald*, should not have been allowed to have been read to the jury by the witness.

First, because not competent in any event.

Second, because it was not shown to be all that was said.

Third, it was not shown that it stated correctly what was said. See 45 Miss. 330 ; Greenleaf Ev. 1, § 200.

The court erred in refusing to admit the evidence of Matt Clay, Jr., to show what instructions were given defendant when the writ was placed in his hands. It was admissible as part of the history of the case and for special reasons in this case. It would have tended to rebut the idea that as the defendant was an ignorant, unlettered negro, he probably concluded he had the right to kill the deceased. It would show that he was, on the other hand, properly informed. In a case of conflict of testimony, we are entitled to the benefit of the probability that defendant acted as instructed.

The first instruction for the state was erroneous. It was not applicable to the facts. No one had testified that deceased was killed *merely because he would not stop when told.* Besides, it is upon the *weight* of evidence. It is not correct as a hypothetical instruction because it does not sum up all the material facts of the case.

At the time he was killed deceased was *carrying* away stolen goods, and was therefore in the act of committing a felony. The law justifies the taking of a life, when necessary to prevent the commission of a felony. *Oliver* v. *State*, 17 Ala. 587 ; *State* v.

*Thomson,* 91 Ohio 188; *State* v. *Kennedy,* 20 Ib. 56; *Commonwealth* v. *Riley,* Thatch. C. C. 471; *Bohannon* v. *Commonwealth,* 8 Bush. 481; *Pond* v. *People,* 8 Mich. 150; *Dill* v. *State,* 25 Ala. 15; *State* v. *Rutherford,* 1 Hawks. 457; *Ruloff* v. *People,* 45 N..Y. 213; *U. S.* v. *Outerbridge,* 5 Sawy. 620. Reasonable ground to believe a felony is about to be committed is all that is necessary. *Keener* v. *State,* 18 Ga. 194; *State* v. *Harris,* 1 Jones 190; *Young* v. *Commonwealth,* 6 Bush 312; *Stoneman* v. *Commonwealth,* 25 Gratt. 887; *State* v. *Roane,* 2 Dev. 58; *State* v. *Chandler,* 5 La. An. 489; *Staten* v. *State,* 30 Miss. 619. Homicide is justifiable " when necessarily committed in arresting any felon fleeing from justice." Code 1880, § 2878; 61 Am. Dec. 162 (note); 84 Ib. 359; Bishop Cr. L. II, § 647; I Bishop Cr. Pro. § 159; I Hale's Pleas C. 481; Greenleaf Ev. III, § 1155; 2 Whart. Cr. L., §§ 406–411; 4 Blackstone Com. 180.

The same principles applied to the second and third instructions show them to be erroneous, and the fifteenth and sixteenth instructions asked by defendant were correct. The other authorities cited in the brief are not applicable to the points decided in the opinion.

*T. M. Miller,* attorney-general, for the state.

No brief on file for the state.

Argued orally by H. C. McCabe for appellant, and by the attorney-general for the state.

CAMPBELL, J., delivered the opinion of the court.

The testimony of the witness, McCaleb, was properly admitted. As we understand the record, he testified that his report of the interview with the prisoner, as published, was an accurate statement of what occurred between him and the prisoner, and he adopted it as his testimony, but was not willing to affirm that it was verbally accurate, or that it contained all that the prisoner said. It accords with both English and American authorities in such case to admit the testimony. See 15 American Dec., p. 194, for an intelligent presentation of the true rule on this subject.

No error was committed in excluding the testimony of Matt Clay, Jr.

By the common law it is lawful to kill a fleeing felon, where he cannot otherwise be taken, and the necessity of such killing is a fact for the jury to determine. " If the warrant be for felony, flight is tantamount to resistance, and the fleeing felon may be justifiably killed, if he cannot be otherwise secured," was the utterance of a judge in *Rex* v. *Finnucane*, 1 Craw. & D. 1. It is required that the officer shall act with caution and prudence, and shall not precipitately resort to fire-arms as a means of making an arrest.

Our statute, § 2878 of the code, makes homicide justifiable " when necessarily committed in arresting any felon fleeing from justice," and is merely declaratory of the common law on this subject. The officer who kills one for whom he has a warrant for felony, must satisfy the jury trying him for the homicide that he tried in good faith, and with reasonable prudence and caution, to make the arrest, and was unable because of the flight of the person to secure him, and that he resorted to the severe means employed when other proper means had failed, and when, as determined by the state of things as between him and the fleeing felon, the arrest could not be made without a resort to the means employed.

The jury is to judge of the necessity to kill, claimed by the officer as a justification of the killing, and the fact should be determined by a consideration of all the circumstances attending the officer and the deceased at the time, and a reasonable doubt whether the killing was necessary or not should secure the acquittal of the officer.

Tried by these views, the jury was wrongly instructed.

The first instruction for the state is an invasion of the province of the jury, because it directs a conviction if the jury believes certain things stated in it, and does not have reference to the circumstances attending the parties, as shown in evidence, which the jury, but for the instructions, might have considered as justifying the killing. The alleged necessity for the killing being a fact for the jury to determine, should be left to the jury without any opinion

from the court as to the influence of any given facts, or their insufficiency to establish a particular conclusion. The same objection applies to the second and third instructions for the state.

The fourth instruction is not correct as applied to this case. The accused claimed to have killed the deceased under circumstances which justified it, because of necessity, and the jury should have been allowed to pass on that question of fact.

The fifth instruction for the state is of doubtful meaning and questionable propriety. What idea is contained in the word " apparently " employed in it is not apparent to us.

The court instructed the jury quite fully and liberally for the accused. Most of the instructions refused were properly refused, but the fifteenth and sixteenth asked by him should have been given. Undoubtedly, if the jury believed that the killing was probably necessary to prevent the escape of the fleeing felon, the accused was entitled to an acquittal, and that is the proposition contained in these instructions.

*Reversed and remanded for a new trial.*