THE STATE v. C. M. SIGMAN et al.

*Arrest — Assault — Homicide— Officer — Town Constable — Municipalities.*

1. The powers conferred upon city and town constables by sections 3808, 3810, *The Code,* are limited, in respect to arrests without warrant, to the territory embraced within the corporate boundaries; but when the constable is acting under a valid warrant from the Mayor of the municipality, or other duly authorized officer, he may make arrests at any place within the county in which such city or town is situated.

2. If an officer is resisted in making an arrest, he may use that degree of force which is necessary to the proper performance of his duty; and, after an accused person is arrested, the officer is justified in the use of such force as may be necessary, even to taking life, to prevent his escape, whether the offence charged is a felony or misdemeanor.

3. But, where a person charged only with a misdemeanor flies from the officer to avoid arrest, the latter is not authorized to take life or shed blood in order to make the arrest. Under such circumstances, if he kills, he will at least be guilty of manslaughter, and he will be guilty of an assault if no actual injury is inflicted, if he uses such force as would have amounted to manslaughter had death ensued.

4. Where a person charged with a misdemeanor escaped from the custody of an officer, and was fleeing to avoid a re-arrest, and the officer, being unable to overtake him, threatened to shoot, and, the fugitive not stopping, did fire his pistol when within thirty yards: *Held,* that the officer was guilty of an assault, no matter whether his intention was to hit the person so fleeing or simply to intimidate him and thereby induce him to surrender.

5. An officer is authorized to take such precautions for the safe custody of his prisoner—such as tying or handcuffing—as in his judgment may be necessary, provided he acts in good faith and without malice.

This was an INDICTMENT charging both the defendants with an assault with a deadly weapon, to-wit, a pistol, tried at the Spring Term, 1890, of the Superior Court of CALD-WELL County, before *Bynum, J.*

The defendant Sigman was, at the time when the assault was alleged to have been committed, town constable of the town of Lenoir, and arrested the prosecutor, Robert Tuttle, on a lawful warrant, issued by the Mayor of said town, and charging the prosecutor with having committed an assault within the corporate limits of said town.

The defendant Sigman first arrested Tuttle by virtue of the warrant within the limits of the municipality, but by an artifice he escaped from custody and fled beyond said limits. Subsequently Sigman pursued and arrested him at a house three miles from the town, and while *en route* for the town with the prisoner met the defendant Campbell, and, summoning him to assist, placed Tuttle in his custody.

After Campbell had taken the prisoner into the town of Lenoir, the latter again escaped and fled beyond the corporate limits. The defendants pursued him, Campbell taking one direction and Sigman another. The defendant Sigman found Tuttle outside of the town, and ran after him some distance till he fled out of his sight, but Tuttle ran near to the defendant Campbell, who pursued him, threatening to shoot. Campbell was within about thirty yards, when, seeing that he could not outrun Tuttle, he fired his pistol. Tuttle testified that the ball whistled by him, while Campbell swore that it was not aimed at him at all, but was pointed towards the ground near to himself, and fired into the ground in order to frighten Tuttle.

There was a verdict of guilty, and from the judgment thereon the defendant appealed.

*The Attorney General* for the State.
No counsel, *contra.*

AVERY, J.—after stating the facts: The defendant Sigman, by virtue of his office as constable of the town of Lenoir, was authorized to execute any lawful warrant issued by the Mayor, and charging a criminal offence wherever he might find the person accused within the county of Caldwell, in which said town was situate. This authority was conferred upon him by § 3810 of *The Code;* but, perhaps, in more explicit terms, by the Act of 1885, amendatory of the town charter (ch. 23, § 24, Laws of 1885). Section 3810 provides that it shall be lawful for city and town constables to serve all civil and criminal processes that may be directed to them by any Court within their respective counties, as prescribed by law in the case of other constables. Section 24, Art. 4 of the Constitution requires that "in each township there shall be a constable, elected in like manner by the voters thereof, who shall hold his office for two years; while sections 643 and 644 of *The Code* invest them with all the powers formerly exercised by them, and make it their additional duty to "execute all precepts and processes of whatever nature to them directed by a Justice of the Peace, or other competent authority within the county, or upon any bay, river or creek adjoining thereto," &c.

The Mayor of every city and incorporated town is constituted by law an inferior Court, with "the jurisdiction of a Justice of the Peace in all criminal matters arising under the laws of the State or the ordinances of said city or town," *The Code*, §§ 3818 to 3820. The Mayor of Lenoir had the right to issue the warrant, under the authority of which the defendant Sigman arrested the prosecutor, and the town

constable was protected in executing it, without the use of excessive force, anywhere in Caldwell County.

If the duty of serving warrants had been imposed by *The Code* in language at all equivocal, the section of the town charter declaratory of the powers and duties of the town constable would have shielded the defendant Sigman, who was confronted, as an officer, with the mandatory requirement that he should "execute all processes issued by the Mayor," when the law added no condition to this injunction except that it should not be void upon its face for want of jurisdiction.    Another clause in the same section of the charter, like section 3808 of *The Code*, limits his power, as a peace officer, to make arrests without warrant, to the territory within the boundaries of the town.

Sigman was not guilty of a simple assault even in making the arrest outside of the town after the first escape.    He was not present when the prosecutor was captured by Campbell the third time, and, therefore, did not aid or abet him in the use of excessive force.    In the precautionary measure of securing a prisoner (who had shown himself so swift and slippery) by the use of handcuffs, he did not so abuse his power, according to the evidence, as to subject himself to indictment for an assault.    *State* v. *Stalcup*, 2 Iredell, 50; *State* v. *Belk*, 76 N. C., 10; *State* v. *Pugh*, 101 N. C., 737.

In any aspect of the testimony, the Judge should have instructed the jury that the defendant Sigman should be acquitted, and for his failure to do so a new trial must be granted to him.

If the prosecutor had turned upon Campbell while he was pursuing him, and resisted arrest, the latter would have been protected in the use of a degree of force that a jury would ordinarily consider excessive, if he was acting in good faith and was free from the influence of malice.    *State* v. *McNinch*, 90 N. C., 695; *State* v. *Pugh*, *supra;* 1 Bish. Cr. P., 620.    But a very different principle prevails where a party charged

with a misdemeanor flees from an officer, who is entrusted with a criminal warrant, or *capias*, in order to avoid arrest. The accused is shielded in that event, even from an attempt to kill with a gun or pistol, by the merciful rule which forbids the risk of human life or the shedding of blood in order to bring to justice one who is charged with so trivial an offence, when it is probable that he can be arrested another day and held to answer. 1 Bishop Cr. Pr., 616. An officer who kills a person charged with a misdemeanor while fleeing from him is guilty of manslaughter at least. 1 Wharton's Cr. Law, § 5 (9th ed.); 2 Bishop's Cr. L. (7th ed.), § 649.

After an accused person has been arrested, an officer is justified in using the amount of force necessary to detain him in custody, and he may kill his prisoner to prevent his escape; provided, it becomes necessary (1 Bishop's Cr. Pr., § 618) whether he be charged with a felony or a misdemeanor. But when a prisoner charged with a misdemeanor has already escaped, the officer cannot lawfully use any means to recapture him that he would not have been justified in employing in making the first arrest; and if, in the pursuit, he intentionally killed the accused, it is murder; and if it appear that death was not intended, the offence will be manslaughter. 1. Wharton's Cr. Law, §§ 401 to 407; 2 Bishop's Cr. Law, § 549; Hale's P. of C., 481; Foster 271.

A person may be guilty of an assault upon another with a pistol without firing it all, and if he does fire it without intending at the moment of firing it to hit the person upon whom he is charged with committing the offence. *State v. Morgan,* 3 Ired., 186; *State v. Myerfield,* Phil., 108; *State v. Rawles,* 65 N. C., 334. Even if the defendants had consented to the escape, they would have been authorized to rearrest the prosecutor on the same warrant, but neither was empowered to use more force than he would have been warranted in using in first securing him. Such use of a pistol as would have made Campbell guilty of manslaughter if he

had killed the prosecutor, was an assault, if no actual injury ensued.

We do not concur with the Judge who tried the case below in the opinion that the guilt of the defendant Campbell depended on his intention when he fired the pistol. The prosecutor testified that the ball passed near his head, and was fired when the defendant was threatening to kill him; while the latter swore that he aimed the pistol at the ground when he fired. Another witness thought the weapon was pointed in the direction of Tuttle, and the defendant does not say that it did not at any time bear upon the prosecutor. If Campbell so used his pistol in the pursuit as to constitute an assault upon Tuttle, he was guilty, no matter what may have been his actual purpose, when he shot. The law does not justify killing one accused of a misdemeanor in order merely to stop his flight, and we cannot concur in any view of the law that might be construed to justify such careless handling of guns or pistols by officers armed with criminal process, as would ordinarily constitute an assault, merely because they can satisfy a jury that at the moment of firing they did not intend to hit one fleeing from arrest on a charge of misdemeanor. Judgment is affirmed as to Campbell. A new trial will be granted to the defendant Sigman.

Error as to Sigman.          Affirmed as to Campbell.