THOMAS J. BROWN *v.* EDWARD B. WEAVER ET AL.

1. SHERIFF. *Arrest of misdemeanant. Prevention of escape. Liability for shooting. Code 1892, § 1152.*

  A sheriff is not justified in shooting a fleeing misdemeanant in order to arrest him, or to prevent his eacape. So to do is not authorized by code 1892, § 1152.

2. SAME. *Official bond.*

  A misdemeanant who has been unjustifiably shot by a deputy sheriff, in attempting to arrest him under a warrant, or in attempting to prevent his escape after arrest, can mantain an action for damages on the official bond of the deputy's principal.

FROM the circuit court of Choctaw county.

HON. W. F. STEVENS, Judge.

Action by appellant, plaintiff below, on the official bond of the sheriff of Choctaw county; the judgment of the court below was favorable to the sheriff and his sureties, defendants below,

and the plaintiff appealed to the supreme court.   The facts are stated in the opinion of the court.

*Critz, Beckett & Leverett,* for appellant.

The cases where a killing by an officer are excused are laid down in the statute: (*a*) In obedience to the judgment of the court; (*b*) in overcoming actual resistance; (*c*) in retaking a felon; (*d*) in arresting a fleeing felon; (*g*) when attempting to apprehend a felon; (*h*) when suppressing a riot or in keeping or preserving the peace.   Code 1892, § 1152.

Bastardy at the suit of the mother is purely a civil proceeding for support of the child.   Code 1892, § 263.   A man cannot, either justifiably or excusably, kill another either to prevent a trespass or a larceny. · *McDaniel* v. *State,* 8 Smed. & M., 403, 418, 419.

It is a familiar principle of law that when a statute undertakes to define what can be done, *expressio unius exclusio alterius.*   A case exactly in point was lately decided by the supreme court of Kentucky.   That court emphatically declares that a peace officer who has arrested a man on a warrant for bastardy, has no right to shoot the prisoner simply to prevent an escape, and closes the opinion by saying: "The officer, in such case, has no more right to kill the prisoner than he would have if the prisoner would simply lie down and refuse to go with him."   *Head* v. *Martin,* 85 Ky., 481, 485, 486.   Such is the law everywhere.   Russell on Crimes, marg. p. 799; American Law of Homicide (Wharton), 48–51; 2 Bishop New Criminal Law, sec. 651; 2 Wharton on Homicide, sec. 212; *Thomas* v. *Kirkland,* 55 Ark., 502; *Clements* v. *State,* 50 Ala., 119, 120; *Williams* v. *State,* 44 Ala., 44; *State* v. *Sigman,* 106 N. C., 728, 732, 733; 9 Am. & Eng. Enc. L., p. 608, note 4; *Spencer* v. *Richards,* 2 Dev. & Bat., 264; *State* v. *Reane,* 2 Dev., 58; *Reneau* v. *State,* 2 Leigh, 720, s.c. 31 Am. Rep., 628.

The court below tried to justify its ruling by an argument attempted by Bishop, in a note to sec. 161 of 1 Bishop New Crim.

Pro.   The mistake that Mr. Bishop makes is in construing the expression in some of the authorities that an officer had the right to repel force by force, and, if necessary, could kill to repel actual resistance or an attempt to break away.   He construed the words "break away" to mean break and run according to the common acceptation.   An examination of the authorities cited by him will show that the breaking away meant was an actual breaking away or loose from the officer, which comes under the head of actual resistance.   But, even in such cases, it is the duty of officers to use means efficient to secure their prisoners without resorting to the use of firearms or dangerous weapons, and they will not be excused for taking life in any case where, with diligence and caution, the prisoner could otherwise be held.   *Reneau* v. *State*, 2 Leigh, 720; *Jackson* v. *State*, 66 Miss., 95; *Wallace* v. *State*, 21 So. Rep., 662.

We do not believe that there is an authority in the English language which holds, or ever has held, that an officer is justified in shooting or killing a prisoner under arrest for a misdemeanor for trying to escape by simply running away, while there is an unbroken line of decisions, both English and American, against any such barbarity.   We are supported in this statement by the supreme court of Arkansas, where all the American authorities are collected in *Thomas* v. *Kinkhead*, 55 Ark., 502; *Spencer* v. *Richards*, 2 Dev. & Bat., 264; *Head* v. *Martin*, 85 Ky., 481.

The condition of the bond is to "faithfully perform all the duties of the office."   Code 1892, § 3055.   And the sheriff is made liable for both the acts and the "misconduct" of his deputy.   Section 4114 says, "that when a sheriff or his sureties shall suffer by the misconduct of the deputy."   Code 1892, §§ 4112 and 41 14.

Section 4113 refers to the ordinary omissions and defaults in civil proceeding; and § 4114 refers to misconduct of all kinds. The sheriff, even at common law, has always been held liable for the acts and "misconduct" in office of his deputy or bailiff.

In law they are regarded as one. Hence, if a deputy mistreats a prisoner, or commit an unlawful act in trying to arrest a person, the sheriff is liable, because "it is an act committed under color of the office." *Spencer* v. *Richards*, 2 Dev. & Bat., 264.

Whenever the sheriff is made liable for the "acts and misconduct" of his deputy, it necessarily follows that the sheriff's bond is liable, for although the sheriff may do many things not under color of the office, yet it is legally impossible for a sheriff, as such, to be responsible for any "act or misconduct" of the deputy that was not done by the deputy under color of the office. The bond of the sheriff is conditioned that "he shall faithfully perform all the duties of said office." If he appoints deputies to go out and shoot people, he has not faithfully performed all the duties of his office, some of which duties are to see that prisoners are fed and taken care of and treated humanely, and not shot and killed. Both the sheriff and his bondsmen are liable for the "misconduct" of the deputy, in shooting and mistreating prisoners. *Thomas* v. *Kinkhead*, 55 Ark., 503; *Shields* v. *Pfiary*, 41 S. W. Rep. (Ky.), 267, 268; *Lammon* v. *Feusier*, 111 U. S., 19; *State* v. *Walford*, 11 Moon (Ind. App.), 392–394; *Young* v. *Carney*, 91 Iowa, 564, 565; *Cash* v. *People*, 32 Ill. App., 250, cited in vol. 6, Gen. Dig. (Am. & Eng.), p. 312, sec. 39; *Risher* v. *Meehan*, 11 Ohio C. C., 403, cited in vol. 1, Gen. Dig. (Am. & Eng.), new series, p. 235, sec. 45; *Dishnean* v. *Newton*, 91 Wis., 200, 201; *State, use, etc.*, v. *Boyd*, 120 N. C., 56; *Clancy* v. *Kenworthy*, 74 Iowa, 743, 744; *Tieman* v. *Haw*, 49 Iowa, 315, 316, and authorities cited; *Fish* v. *Nethercutt*, 14 Wash., 582–584; *Worwalk* v. *Fawcett*, 68 Conn., 7–10; *Hursey* v. *Birch*, 7 N. Y. Supp., 934; *Murfree* v. *Collins*, 94 Ala., 394; *Kendricks* v. *Walton*, 69 Tex., 194–198.

*J. W. Pinson*, for appellees.

The great responsibility resting on a sheriff who has a prisoner in his custody charged with an offense, and who permits

him to escape, is such that the officer has the right to shoot the prisoner, if necessary to prevent an escape. If the officer suffers an escape, he is liable upon his bond, is subject to indictment himself, and, on conviction, to fine and imprisonment and removal from office. Code, 1892, §§ 1074, 1226. If the escape be shown, the law implies negligence on the part of the sheriff. *Shattuck* v. *State*, 51 Miss., 575. It may be said that the sheriff should have handcuffed or otherwise shackled the prisoner. In this case it was impossible for him to have done so, because the prisoner was much the stronger of the two. To handcuff or iron a prisoner, however, is a matter within the discretion of the officer; he is not compelled to do so. Bishop on Crim. Pro., 745; *State* v. *Shattuck*, 2 Ired. (N. C.), 50.

Bastardy is a quasi criminal proceeding, and governed, so far as concerns the law of arrest, by the same rules which apply to misdemeanors. Our statutes give to bastardy trials all the attributes of a criminal trial. It provides expressly for the arrest of the defendant. Did the deputy sheriff have the right to shoot plaintiff? Happily for appellees the question has been answered in the affirmative by Mr. Bishop, in his work on Criminal Procedure (3d ed.), sec. 161, p. 163, who lays the rule down thus: "After the arrest has been actually made, then, in felonies and misdemeanors alike, if the arrested party attempts to break away, he, the officer, may kill to prevent it, if this be necessary." The burden of proof was on the plaintiff to show that the shooting was not necessary to prevent his escape. 1 Am. & Eng. Enc. L., 745; *Henry* v. *Lowell*, 16 Babb (N. J.), 268; *Wright* v. *Keith*, 24 Me., 158; *Keiger* v. *Osburne*, 7 Black (Ind.), 74. This burden was not met by plaintiff; on the contrary, the plaintiff's own evidence showed that the shooting was necessary to prevent an escape.

*Alexander & Alexander*, on same side.

Section 4112, code 1892, provides that " sheriffs shall be liable for the acts of their deputies, and for money collected by

them.'' This, we take it, is merely declaratory of the general law. It is, of course, clear that the word acts does not include all acts, any more than '' all money collected by them '' includes collections not officially made. The language is to be given a reasonable construction, and, so construed, acts means acts within the scope of the deputy's duties, and '' money collected '' means money collected as deputy sheriff, and which by law he it authorized to collect. If it be true, as contended by appellant, that under no circumstances a sheriff or his deputy can shoot an escaping prisoner arrested for a misdemeanor or · on civil process, then it is difficult to conceive how it can be said that his sureties stipulated for the manner of the exercise of the power. Wherever there is the power to do an act, and the sheriff is given discretion as to the manner of doing it, then, and then only, the sureties become bound for the reasonable and proper exercise of such discretion. The fact that a deputy thinks he has the right to do a thing, does not determine whether it is done under *colore officii* or *virtute officii*. It must depend on the nature of the act itself. A sheriff is not liable for any act which the law does not require the deputy officially to perform. 5 Am. & Eng. Enc. L., 635; Smith on Sheriffs, 22, and cases cited; *Robertson* v. *Leckel*, 127 U. S., 507. A sheriff is not liable for his deputy's criminal acts. Throop on Pub. Offi., sec. 589; *Hendricks* v. *Walton*, 69 Tex., 192. When the deputy is an officer recognized by law, takes an oath, etc., the principal officer is not liable. Our statute, of course, modified this broad rule, but, as the deputy takes an oath, and his appointment and oath are filed, etc., the general rule that the officer is not liable for the tort of his subordinate will not be extended in cases of a sheriff and his regularly appointed deputy. Throop, sec. 592; *Robertson* v. *Lechel*, 127 U. S., 507. A public officer is not liable for wrongs which the position of his deputy gave an opportunity to do or inflict, unless the act was an official act. *Whyte* v. *Mulls*, 64 Miss., 158.

It would be very bad policy to hold that a sheriff, who fre-

quently, especially during courts, must have a score of bailiffs and deputies, is liable on his bond for every tort committed by such subordinates.  The bond is for the protection of the state and county, as well as the individual, and it would be contrary to public policy to hold that the entire penalty of the bond could be exhausted by a suit for punitive damages and mental and physical suffering caused by the criminal act of a deputy. No good man would ever take the office of sheriff, and no sane man would ever go on his bond, if the bond covers liability for such torts.

The point as to the right of the officer to shoot to prevent an escape after an arrest, has been fully discussed by our associate, Mr. Pinson, upon whose brief we rely.  On this branch of the case appellant cannot hope to succeed, unless this court will thrust aside Bishop's Criminal Procedure as an authority.

Argued orally by *R. C. Beckett*, for appellants, and by *C. H. Alexander*, for appellees.

WHITFIELD, J., delivered the opinion of the court.

The appellant had been arrested by the deputy sheriff in a bastardy proceeding, and had escaped from the deputy sheriff, without violence, simply running away from him, and whilst merely running away, was, by the deputy sheriff, shot, on the notion that he had a right to shoot and kill him, if necessary, to prevent the escape at the time.  Appellant sustained very serious injuries, and suffered greatly for a long time, and is probably permanently disabled.  He brings this suit for damages against the sheriff and the sureties on his bond, on the ground that the deputy was guilty of "misconduct" in shooting him under the circumstances, and that his act was done *virtute officii*.  Can the action be maintained?

Our statute, § 1152 of annotated code of 1892, in enumerating the cases in which homicide is justifiable, provides that it shall be so, if committed in (c) "retaking any felon who has been

rescued or has escaped;'' (*d*) ''in arresting any felon fleeing from justice,'' or (*g*) '' when necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed.'' It nowhere authorizes the killing of a misdemeanant in order to arrest him, or to preven this escape after arrest. And we understand the authorities as conclusively showing that the common law did not authorize the killing of a misdemeanant in either of said cases. *Thomas* v. *Kinkhead*, 55 Ark., 502 (and authorities there cited), a finely reasoned case, to which we especially refer. In this case the court say, approving *State* v. *Sigman*, 106 N. C., 728, that ''where a prisoner has already escaped, no means can be used to recapture him which would not have been justifiable in making the first arrest, and that if in pursuing him the officer intentionally kills him, it is murder.'' And again the court said: '' The only question presented by the latter instruction, is whether or not an officer, having in his custody a prisoner accused of a misdemeanor, may take his life if he attempts to break away, where, in the language of the court's charge, 'no other means are available' to prevent his escape. A resort to a measure so extreme in cases of misdemeanor was never permitted by the common law. 1 East, P. C., 302. That law has not, it is believed, lost any of its humanity since the time of the writer we have just cited, and without legislative authority, the severity of a remote age ought not to be exceeded in dealing with those who are accused of smaller offenses.''

In *United States* v. *Clark*, 31 Fed. Rep., 710, Mr. Justice Brown, now of the United States supreme court, says: '' The general rule is well settled by elementary writers upon criminal law, that an officer having a person charged with felony may take his life if it be absolutely necessary to do so to prevent his escape, but he may not do this if he be charged simply with a misdemeanor, the rule of the law being that it is better that a misdemeanant escape than that human life be taken.'' This is cited in *Thomas* v. *Kinkhead, supra*, and that court then pro-

ceeds: "It has been said that the officers of the law are clothed with its sanctity and represent its majesty. *Head* v. *Martin*, 3 S. W. Rep., 623. And the criminal code has provided for the punishment of those who resist or assault them when engaged in the discharge of their duties. But the·law-making power itself could not, under the constitution, inflict the death penalty as the punishment for a simple misdemeanor, and it would ill become the majesty of the law to sacrifice a human life to avoid failure of justice in the case of a petty offender, who is often brought into court without arrest and dismissed with a nominal fine. It is admitted that an officer should not attempt to kill one who flees to avoid arrest for misdemeanor, although it may appear that he can never be taken otherwise. If he runs, then, before the officer has laid his hands upon him, with words of arrest, he may do so without danger to his life; but, if by surprise or otherwise, he be for a moment sufficiently restrained to constitute an arrest, and then break away, the officer may kill him if he cannot overtake him. Such is the effect of the argument and of the rule in support of which it is made. We can see no principle of reason or justice on which such a distinction can rest, and we therefore hold that the force or violence which an officer may lawfully use to prevent the escape of a person arrested for a misdemeanor is no greater than such as might have been rightfully employed to effect his arrest. In making the arrest or preventing the escape the officer may exert such physical force as is necessary on the one hand to effect the arrest, by overcoming the resistance he encounters, or, on the other, to subdue the efforts of the prisoner to escape; but he cannot, in either case, take the life of the accused or inflict upon him great bodily harm, except to save his own life or to prevent a like harm to himself."

In *Reneau* v. *State*, 2 Lea (Tenn.), 720, it is said: "It is considered better to allow one guilty only of a misdemeanor to escape altogether than to take his life. . . . The prisoner doubtless acted under the belief which erroneously prevails as

to the rights of a public officer—that is, that he may lawfully kill a prisoner if he fails to obey his command to halt.    This is a very erroneous and very fatal doctrine, and must be corrected.''

In *Head* v. *Martin*, 85 Ky., p. 480. it is said at page 483: ''To permit the life of one charged with a mere misdemeanor to be taken when fleeing from the officer, would, aside from its inhumanity, be productive of more abuse than good.   The law need not go unenforced.   The officer can summon his posse and take the offender.    The reason for this distinction between killing in the case of a felony and misdemeanor is obvious.    The security of person and property is. not endangered by a petty offender being at large, as in the case of a felon.    The very being of society and government requires speedy arrest and punishment of the latter.''    And, again, at page 485: ''So careful, however, is the law as regards human life, that if even the felon can be taken without the taking of life, and he be slain, it is at least manslaughter; even as to him it can be done only of necessity.''    And this is the doctrine of our court in *Jackson* v. *State*, 66 Miss., 95.    To the same effect are *State* v. *Sigman*, 106 N. C., p. 728; *Spencer* v. *Moore*, 2 Devereux & Battle's Rep., p. 264; *State* v. *Roane*, 2 Devereux Rep., p. 62.

Counsel for appellee cites the text of Mr. Bishop in his work on Crim. Pro. (3d ed.), vol. 1, sec. 161, but it is shown conclusively in *Thomas* v. *Kinkhead*, 55 Ark., *supra*, that the two cases cited by Mr. Bishop (*Caldwell* v. *State*, 41 Tex., 86, and *Wright* v. *State*, 44 Tex.. 645), are not in point.    In 1 Bishop on Crim. Pro. (4th ed.), sec. 161, paragraphs 1, 2, notes 1, 4, p. 91, Mr. Bishop reviews and criticizes the cases of *Reneau* v. *State*, 2 Lea, and *Thomas* v. *Kinkhead*, *supra*, stating that, in the first case, the court which cited his new criminal law, vol. 2, secs. 648, 649, as supporting its view, failed to note that in these sections he was only speaking of an officer killing a misdemeanant ''flying from arrest'' originally, and not one ''resisting arrest or attempting an escape.''    He criticized *Thomas* v. *Kinkhead* as unsound, and calls it '' an unfortunate decision.''

In note 1, at p. 91, he cites *State* v. *Sigman*, 106 N. C., 728, as supporting the view that an officer may kill a misdemeanant who attempts to "break away" from the officer, and thus escape. In *Thomas* v. *Kinkhead* the Arkansas supreme court, as we think correctly, shows that the decision in *State* v. *Sigman*, *supra*, is correct, but that the language of the court in that case is inconsistent with the decision and the general line of reasoning in the case.

In Mr. Bishop's new Criminal Law (8th ed., sec. 647, par. 3, note 1), Mr. Bishop cites *Jackson* v. *State*, 76 Ga., 473, to the proposition that "after an arrest, whether for felony or misdemeanor, or during an imprisonment, the life of the prisoner may be taken, if necessary to prevent the escape." That was the case of a guard killing a convict in the penitentiary, who, he supposed, was trying to escape. It supports the proposition that an officer may kill a convicted felon trying to escape from imprisonment for felony, but it furnishes no support to the doctrine that an officer may kill a misdemeanant who is merely effecting his escape after arrest, or from imprisonment for mere misdemeanor, by simply running away. If Mr. Bishop means merely to say that when a misdemeanant, after arrest, tries to "break away," violently resisting or assaulting the officer, the officer may kill him, as in self-defense, to prevent the infliction of a felony upon himself, the doctrine is sound, and not in conflict with the cases he criticizes. But if he means to say, as we understand him, that an officer may kill a misdemeanant whom he has arrested, and who eludes the officer, and gets away from him without resisting the officer, and without employing any force, while such misdemeanant is effecting his escape merely by running away, then such doctrine is not sound, in our judgment, and is unsupported by the authorities. 3 Russell on Crimes (6th ed.), p. 132, Holroyd, J., saying: "An officer must not kill for an escape, where the party is in custody for a misdemeanor." McLain, in his Criminal Law (1897), sec. 298, approves *Reneau* v. *State*, *supra*, criticized by

Mr. Bishop, and lays down the doctrine we have announced, and points out the very distinction we have just above drawn, as being the only ground of support for Mr. Bishop's doctrine, saying: "It is probable, however, that even as to preventing escape, the officer is justified in taking life only to prevent escape for felony, or where, the offense being a misdemeanor, in resisting force with force, his own life is put in peril, and not where he takes life merely to prevent escape of one charged with a misdemeanor." Substituting for "where his own life is put in peril," where, in killing, he does so to save his own life, or prevent the infliction of a felony upon himself, this is the sound doctrine.

The Kentucky supreme court well says in such a case (*Head v. Martin*, 85 Ky., p. 486): "He has no more right to kill him [that is, when he is merely running away] than he would have if the offender were to lie down and refuse to go with him."

Our own court has held, in *McDaniel* v. *State*, 8 Smed. & M., p. 14, "that no trespass upon the personal property of another will authorize the killing of a human being, and that any such killing would be murder, if committed with a deadly weapon." And that even in the case of a fleeing felon, the officer must satisfy the jury "that he tried, in good faith, and with reasonable prudence and caution, to make the arrest, and was unable, because of the flight of the person, to secure him, and that he resorted to the severe means employed when other proper means had failed, and when, as determined by the state of things, as between him and the fleeing felon, the arrest could not be made without a resort to the means employed." *Jackson v. State*, 66 Miss., 95.

It is held in *Head* v. *Martin*, *supra*, that one arrested in a bastardy proceeding is to be regarded as one arrested for a misdemeanor, although the nature of the proceeding is a civil one. It must be clear, from these authorities, and many others cited in the brief of the learned counsel for the appellant, that the deputy sheriff had no right to shoot Brown, and that he was

guilty of "misconduct" in so doing. Whether, however, the bastardy proceeding is to be treated, in all respects, as a civil suit, or whether one arrested in a bastardy proceeding is to. be dealt with as if arrested for a misdemeanor—so far as the point under discussion is concerned—is obviously immaterial under the authorities.

We turn now to the second branch of the inquiry, whether the sheriff and the sureties on his bond are liable for this "misconduct," as having occurred in the line of duty of the deputy sheriff—as having been done *virtute officii*. The deputy sheriff had a warrant, and under that warrant had arrested Brown, and manifestly he shot him under the notion that, having such warrant and having arrested him, he had the right to shoot him to prevent his escape, when he was merely running away.

The condition of the sheriff's bond is (code 1892, § 3055), "that he shall faithfully perform all the duties of said office during his continuance therein." Sec. 4114 of the code provides plainly that the sheriff and his sureties shall be liable for "any misconduct" of his deputy, and may have judgment over against the deputy and his sureties for the amount of any judgment awarded against the sheriff and his sureties for such "misconduct" of the deputy. Sec. 4113 provides the same remedy for the sheriff against his deputies and their sureties for ordinary acts and defaults in office which the creditor may have against the sheriff. Section 4114 provides for "misconduct" of the deputy, and the liability of the sheriff and his sureties therefor. It is well settled that "the deputies are all servants of the sheriff, and, in law, they are considered but one person." Smith's Sheriffs, etc., p. 21.

In Murfree on Sheriffs, sec. 60, it is said, quoting from *Knowlton* v. *Bartlett*, 1 Pickering, 273: "If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable. If it was not an official, but a personal act, it is equally clear that he is not answerable. But an official act does not mean what a deputy might lawfully do in the

execution of his office; if so, no action could ever lie against the sheriff for the 'misconduct' of his deputy. It means, therefore, whatever is done under color or by virtue of his office.'' And the author then adds: '' To hold the deputy and his sureties liable to the sheriff, on his bond, it is not necessary that the deputy should be acting under color of some writ, but if he is acting under color of his office, and professes so to act, and induces others interested to believe he acted *colore officii*, he and his sureties will be bound by such acts.   No other rule would be safe.   Sureties are not needed on a sheriff's bond if they are only to be held when the acts are legal; they vouch for his acts, and bind themselves to make good any damage he may cause to anyone while acting under color of his office.''

It is not necessary, in this case, to say anything as to what might be the result if the deputy really had no warrant, and simply stated that he had one, and was merely professing to act under color of his office, without being armed with the warrant required by law, since, in this case, it is clear that he did have such warrant, that he arrested Brown under the warrant, and that he shot him when merely running away after arrest, on the idea, clearly, that he had the right to shoot and kill, if necessary to prevent his escape, sought to be effected merely by running away.   We are of the opinion, therefore, that the deputy was acting by virtue of his office; that what he did was done as an official act, and that the sheriff and his sureties are liable for the damages.   Without burdening this opinion with quotations, we cite the following authorities as sustaining this proposition, in addition to Murfree on Sheriffs, cited above: Smith on Sheriffs, p. 21; *Thomas* v. *Kinkhead, supra; Yount* v. *Carney*, 91 Iowa, p. 564, where it is held '' that the arrest by the deputy, being in the line of his official duty, though illegal because in excess of his duty, was nevertheless a breach of the conditions of his bond;'' *Dishneau* v. *Newton*, 91 Wis., p. 201; *Warren* v. *Boyd*, 120 N. C., p. 60; *State* v. *Wolford*, 11 Moon, Ind.

App. Ct. Rep., p. 392; *Lammon* v. *Feusier*, 111 U. S., 17; *Spencer* v. *Moore*, 2 Devereux & Battle's Rep., 264.

In *Robertson* v. *Sichel*, 127 U. S., p. 515, the case went upon the idea that the collector of customs was not liable for the tort of a subordinate, committed in the discharge of duties which it would be "utterly impossible for the superior officer to discharge in person." No such impossibility exists in the case of the sheriff as to the arrest of a person. That case is easily distinguishable from this on its facts, and it is expressly said that the decision there does not interfere with the liability of an officer "for the act of the deputy, performed in the ordinary line of his official duty prescribed by law," and the latter is the case here. Nor is there anything in *Brown* v. *Moseley*, 11 Smed. & M., p. 354, or *Furlong* v. *State*, 58 Miss., p. 717, at all in conflict with anything herein announced.

On return of the case to the court below, it will be proper to amend, so as to bring suit in the name of the State of Mississippi, for the use of T. J. Brown. No objection was made in the court below on this ground. In this case the suit was brought in the name of the real party in interest, and that distinguishes this case from *Nixon* v. *Dillard*, 73 Miss., even viewing that case as looked at by a majority of the court therein.

*Judgment is reversed and cause remanded.*