CASE 17.—ACTION BY VIOLA GROWBARGER AND OTHERS AGAINST THE UNITED STATES FIDELITY AND GUARANTY COMPANY AND OTHERS.—June 12.

# Growbarger, Etc., v. U. S. Fidelity and Guaranty Co., Etc.

Appeal from Ohio Circuit Court.

T. F. Birkhead, Circuit Judge.

Judgment for defendants, plaintiffs appeal.—Reversed.

1. Municipal Corporations—Town Marshals—Liability on Bond—Acts Colore Officii.—Ky. Stats., 1903, Sec. 3690, requires a town marshal to execute a bond under which for any unlawful arrest or assault on any person in making an arrest, he and his sureties shall be liable to the person so injured. By Sec. 4 Ky. Stats, the widow of any person killed by the wanton or malicious use of fire-arms may have an action against the person doing the killing. Held, that where a marshal arrested a person for a misdemeanor, and then unnecessarily and maliciously killed the arrested person while under arrest, his widow might maintain an action on the bond.

2. Same Amount of Liability.—Ky. Stats., 1903, Sec. 3752, having provided that in an action on such a bond the recovery against the principal and surety shall not be limited to the

penalty in the bond, the amount of plaintiffs' recovery was not limited to the penalty.

3. Same—Damages.—While plaintiff might recover punitive damages against the principal in the bond, only compensatory damages could be recovered of the surety.

4. Same—Pleading—Petition.—In an action on a marshal's bond, though the petition admitted that the authorities of the town had made no record showing an acceptance of the bond, it having alleged in substance that the bond was required of the marshal by the council, that it was duly executed, and that it was duly approved and accepted by the town council, and, in addition, an attested copy of the bond, obtained of the proper authorities of the town, having been filed with and made a part of the petition, as against a demurrer, there was a sufficient showing of acceptance.

W. H. BARNES and G. B. LIKENS for appellants.

POINTS AND AUTHORITIES CITED.

1. The widow is the proper party to maintain this action: Ky. Stats., secs. 4, 3690, 3751, 3752; McClure et al v. Alexander, 15 Ky. Law Rep., 732.

2. The defendant Surety Company is liable on its co-defendant's bond as marshal: Johnson v. Williams' admr., 23 Ky. Law Rep., 658; Connelly v. American Bonding & Trust Co. 24 Ky. Law Rep., 715.

3. The amount of the Surety Company's liability is not limited to the amount specified in the covenant: Moss et al. v. Rowlett et al., 112 Ky., 121.

H. P. TAYLOR and ERNEST WOODWARD for appellees.

Our contentions:

1. That the bond of the defendant, Stevens, as town marshal, upon which the action is based, was not accepted or approved by the board of trustees of the town of McHenry; in fact, there is no order approving same, and so much of the petition as alleges there were orders to that effect, was upon motion of plaintiffs stricken out.

2. If the court should hold that the bond sued on has been properly executed, received, approved and accepted by the board of trustees, and that the defendant company is liable thereon, we contend that it would not be liable for the malicious and wilful

acts of the defendant, Stevens, but only for his official acts, and for the payment of any money that might come to his hands.

### AUTHORITIES CITED.

Ky. Stats., sec. 3690; Commonwealth for use of, etc., v. Williamson, etc., 14 Bush, 297; Chamberlain & Tapp v. Brewer, etc., 3 Bush, 304; Carswell's exer., v. Renick & Wood, 7 J. J. Marshall, 281; Donahue v. Drexler, 82 Ky., 157.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

R. Flem Stevens, marshal of the town of McHenry, after arresting W. L. Growbarger, and while having him in custody, for a misdemeanor commited in his presence, shot and killed him. Thereafter this action was brought by appellant Viola Growbrager, widow of the deceased, and S. O. Fogle, administrator of his estate, against the marshal and appellee United States Fidelity & Guaranty Company, surety on his official bond, to recover of them $20,000 damages for the killing of deceased by the marshal, upon the alleged ground that it was not done by that officer in self-defense, but unnecessarily, wantonly, and maliciously. At the appearance term the appellee United States Fidelity & Guaranty Company insisted that the petition contained a misjoinder of plaintiffs and actions, and entered motion to correct same by requiring plaintiffs to elect. The court sustained the motion, but, plaintiffs refusing to make an election, the court made it for them by entering an order, striking the name of the administrator from the petition, and directing that the action be prosecuted in the name of the widow alone. Several amendments to the petition were filed, in one of which the Commonwealth of Kentucky was made a plaintiff,

because the official bond of the marshal is in the nature of a covenant to the Commonwealth, as well as the town of McHenry. Stevens and appellee United States Fidelity & Guaranty Company filed demurrers to the petition, as amended, which were overruled. They then filed separate answers, after which the lower court reconsidered its ruling on the demurrers to the petition, and again overruled the demurrer of Stevens, but sustained that of appellee, and dismissed the action as to it. This appeal is from that judgment.

It seems to be conceded by counsel for appellee that the petition, as amended, states a good cause of action against Stevens as an individual, but denied that there can be any recovery against appellee as surety in his official bond, as marshal. The bond is as follows: "Commonwealth of Kentucky, County of Ohio. We, R. Flem Stevens, principal, and the United States Fidelity & Guaranty Company, of Baltimore, Md., surety, do hereby covenant to and with the town of McHenry, Kentucky, in the sum of one thousand ($1,000.00) dollars, lawful money of the United States, that the said R. Flem Stevens, marshal of the town of McHenry, Ky., shall well and truly discharge all the duties of said office and pay over to such persons, at such times as they may be respectively entitled to the same, all money that may come to his hands as marshal. Witness our hands, this the 4th day of January, 1904. R. Flem Stevens. The United States Fidelity & Guaranty Co., Thos S. Dugan, Gen. Agt. and Atty. in Fact."

The bond in question was executed pursuant to section 3690, Ky. St. 1903, which provides: "The marshal, before he enters upon the duties of his office, shall execute a bond with approved surety, to such

town in the sum of one thousand dollars, conditioned for the faithful performance of his duties, and for any unlawful arrest, or unnecessary or cruel beating or assault on any person in making an arrest, he and his sureties shall be liable to the person so injured on said bond.'' Section 3751, which prescribes the form of the bond, reads as follows: ''The obligation required by law for the discharge or performance of any public or fiducial office, trust or employment, shall be a covenant to the Commonwealth of Kentucky, from the person and his sureties that the principal shall faithfully discharge the duties of the office, trust or employment, but a bond or obligation taken in any other form shall be binding on the parties thereto according to its terms.'' Section 3752 allows the right of action on such official bond in the name of the Commonwealth for her benefit, or for that of any county, corporation, or person injured by a breach of its covenant or undertaking. Its language is as follows: ''Actions may be brought from time to time on any such covenant or bond in the name of the Commonwealth, for her benefit, or for that of any county, corporation or person, injured by a breach of the covenant or condition, at the proper costs of the county suing, against the parties jointly or severally, together with the personal representative, heirs and devisees or distributees of such of them as may be dead; and the recovery against the principal and surety shall not be limited by the amount of the penalty named in such bond. Nor shall the recovery be restricted only to such duties or responsibilities as belong to the office, post, trust or employment at the date of the covenant or bond, but may include any duties or responsibilities thereafter imposed by law or lawfully assumed.'' Appel-

lant rests her right to maintain the action upon section 4, Ky. St. 1903, which provides: "The widow and minor child, or either, or both of them, of a person killed by the careless, wanton or malicious use of fire arms, or by any weapon popularly known as Colts, brass knuckles or slung shots, or other deadly weapon, or sand bag, or any imitation or substitute therefor, not in self-defense, may have an action against the person who committed the killing, and all others aiding or promoting, or any one or more of them; and in such actions the jury may give vindictive damages."

It is contended by appellee that, as surety, its liability upon the marshal's bond cannot be extended beyond the precise terms of that instrument. Therefore it is bound for nothing which is not within the letter thereof. In other words, that its liability is limited to the official acts of the principal, and does not extend to an illegal act, done under color of office, of which he may be guilty, and that for this reason appellee is not responsible to appellant in damages for the homicide charged to the account of Stevens, if, as alleged in the petition, it was without justification or excuse. The following excerpts from section 283 of Mechem on Public Officers well states the rule as to the liability of a surety in an official bond for the acts of his principal: "It is an official act, a failure to perform an official duty, or performing it in an improper manner, which comes within the scope of the surety's undertaking. * * *" In further discussing the subject, the same author, in section 284, says: "Acts done by virtue and authority of the office (virtute officii) are clearly to be regarded as official acts, and render the sureties responsible; but acts done merely under color of the office

(colore officii) do not stand upon so clear a ground. The distinction between the two has been stated thus: "Acts done virtute officii are where they are within the authority of the officer, but in doing them he exercises the authority improperly, or abuses the confidence which the law reposes in him. Whilst acts done colore officii are where they are of such a nature that his office gives him no authority to do them. For acts of the latter kind, it is held in many states that the sureties are not responsible. This question has been most frequently raised, and is well illustrated in cases in which it has been sought to hold liable the sureties of a sheriff, marshal, constable, or other executive officer, who has seized upon process against one person the goods or other property of another, or who has levied upon property which was exempt from such seizure. Upon the one hand, it is said that the officer acts officially, and hence binds his sureties, only when acting in pursuance and by virtue of his writ, and his writ justifies only the seizure of the property of the defendant therein named, not exempt from execution. His seizure of the goods of a stranger, or his seizure of exempt property, is a purely voluntary and unauthorized trespass, which neither his writ nor his official character can justify, and which imposes upon the officer merely personal, and not official, responsibility. On the other hand, it is said that the undertaking of the securities is that their principal will well and faithfully execute the duties of his office, and that he cannot be deemed to have done so when he seizes the property of a stranger, or levies upon property exempt from execution. There is, therefore, such a breach of the condition of the bond as renders the sureties liable. * * *"

The rule last stated prevails in quite a number of states, and is approved by numerous lawwriters. Thus, in Murfree on Sheriffs, section 60, the author, after quoting with approval from a Massachusetts case, which held a sheriff and his sureties liable for the wrongful act of a deputy of the former, performed merely under color of his office, makes the following statement of the law: "Sureties are not needed on a sheriff's bond, if they are only to be held when he acts legally. They vouch for his acts and bind themselves to make good any damage he may cause to any one while acting under color of his office. * * *" In Brown v. Weaver, 76 Miss. 7, 23 South 388, 42 L. R. A. 423, 71 Am. St. Rep. 512, it was held that a sheriff, whose deputy shot one charged with a misdemeanor while fleeing to escape arrest under a warrant therefor, was liable on his official bond in an action for damages brought by the person injured. But the most recent authority on the question under consideration is the case of Johnson v. Williams, Adm'r 111 Ky. 289, 23 Ky. Law Rep. 658, 63 S. W. 759, 54 L. R. A. 220, 98 Am. St. Rep. 416, the facts of which were: very similar to those presented by the petition in the case at bar. The action was instituted by the administrator to recover on the bond of the sheriff damages for the wrongful shooting and killing of his decedent by two of that officer's deputies. The defense interposed was that no liability existed, because the decedent was killed by the deputies under the mistaken belief that he was a person charged with a felony, whose arrest they were seeking under a warrant, and that, as the decedent was trying to escape when the arrest was attempted, they had the right, or would have had such right as to the criminal, to prevent it by shoot-

ing him; and, furthermore, that the act of the killing was not an official act for which the sheriff and sureties in his bond were responsible. But this defense was not deemed good, and it was held by this court that the sheriff was liable on his official bond for the wrongful act of his deputies in question, and that the lower court properly permitted a recovery. Shields v. Pflanz, 41 S. W. 267, 101 Ky. 407, 19 Ky. Law Rep. 648.

According to the averments of appellant's petition, her husband was unnecessarily and maliciously killed by Marshal Stevens, appellee's principal, when under arrest and in the custody of the latter. It matters not that the arrest was legal; if, as alleged, the decedent was not resisting or attacking the officer, and the latter was in no danger at his hands, the homicide was wholly inexcusable. Whether the facts alleged will be established by the evidence to the satisfaction of a jury cannot be known in advance of a trial, but our only concern at present is to determine whether, as set forth in the petition and confessed by the demurrer, they manifest a good cause of action. Accepting as true the version of the homicide contained in the petition, it must be regarded as having resulted either from the improper performance by the marshal of an official duty, or from an abuse of the confidence which the law reposed in him. In either event, the act was virtute officii. This being true, it is an act for which the officer and his surety may be held liable, for the undertaking of the surety, as expressed in the bond, is that the marshal "shall well and truly discharge all the duties of said office, * * *" and that, he cannot be deemed to have done, when in making an arrest he unjustifiably kills the person arrested. There is, therefore, such a

breach of the condition of the bond as renders the surety liable. To so hold would not be such an enlargement of the covenant quoted as to do violence to the rights of the surety. The bond in character and terms substantially conforms to the requirements of section 3690, Ky. St. 1903. But, if this were not so, section 3751 provides that a bond taken in any other form than that specified "shall be binding on the parties according to its terms," and certainly the terms of this bond are broad enough to allow a recovery thereon for such a breach of the covenant in question as is alleged in the petition. Moreover, section 3690, after prescribing the terms of the bond required of a town marshal, declares that for any unlawful arrest, or unnecessary or cruel beating or assault on any person in making an arrest, he and his sureties shall be liable to the person injured on the bond. If the marshal and his sureties could not escape liability for a wrongful assault committed by the former in making an arrest, much less should they be permitted to do so for the unjustifiable killing by the officer of a person in attempting to arrest him, or while holding him in custody after the arrest.

It is further insisted for appellee that, even if responsible in damages for the killing of appellant's decedent, by the marshal, in no event can its liability exceed $1,000, the amount of the bond. We do not concur in this conclusion. The question is, we think, settled by section 3752 of the statute, supra, which allows actions on such a bond as that here sued on by appellant, and in addition contains the following provision: "And the recovery against the principal and surety shall not be limited by the amount of the penalty named in such bond." The bond, being controlled by the section supra, must be considered in

connection with it.  In other words, the provisions
of the statute must be read into the bond in order to
determine the extent to which appellee may be held
liable, in the event appellant on the trial shows her-
self entitled to recover at all.  Moss v. Rowlett, 112
Ky. 121, 65 S. W. 153, 358, 23 Ky. Law Rep. 1411.
Treating the provisions of the section supra as a
part of the bond, we conclude that the amount that
may be recovered is not limited to the $1,000 named
therein, but, while this is true if appellant shows her-
self entitled to recover, the jury cannot properly
award her punitive damages as against appellee.
Punitive damages may be recovered of the marshal,
Stevens, but only compensatory damages can be re-
covered of the surety in his official bond.  In John-
son v. Williams' Adm'r, supra, this court, in respect
to the liability of the sureties of the sheriff, said:
"The covenants of the bond do not require the sure-
ties to do more than compensate an injured party for
the actual damages which he may have sustained
by reason of the misconduct of the sheriff or his
deputies.  Its covenants do not require them to pay
a sum of money which is inflicted by way of punish-
ment.  They have committed no wrong, and therefore
the reason of the law which allows exemplary dam-
ages against wrongdoers cannot make it apply to
them.  * * *"

It is further contended by counsel for appellee that
the judgment of the lower court sustaining the de-
murrer and dismissing the petition as to appellee
was authorized, because of the admission in the
petition that the council or other authorities of the
town of McHenry had neither made nor kept a record
of the execution of the marshal's official bond, or of
its acceptance by that body.  It is true that the

petition contains, in substance, the admission that
the records of the council fail to show the execution
or acceptance of the bond; but it also contains the
averments, in substance, that the bond was required
of the marshal by the council, that it was duly exe-
cuted by him as principal and appellee as surety, and
also that it was duly approved and accepted by the
town council, and, in addition, an attested copy of the
bond, obtained of the proper authorities of the town,
was filed with and made a part of the petition. These
averments, being confessed by the demurrer, con-
stituted a sufficient statement of the facts showing
the proper execution and acceptance of the bond. If
no such bond was required of the marshal, or it was
not executed by him, or signed by appellee as surety,
or accepted at all, as alleged in the answer filed by
appellee without waiving its demurrer to the peti-
tion, such matters of defense, or any of them, if sus-
tained by sufficient evidence, on the trial, would pre-
vent a recovery as to it, though the mere failure of
the council to make the record of the execution or
acceptance of the bond would not do so, if in fact it
was executed and accepted. In executing an official
bond, only a substantial compliance with the require-
ments of the statute is necessary. If statutes compel-
ling the giving of bonds prescribe what they shall
express, it is to subserve a two-fold purpose: (1)
Uniformity in the terms and conditions; (2) the best
protection possible from the bond to the public and
those dealing with the officer. But as said in Mechem
on Public Officers, section 268, such statutes are
usually directory; "and, inasmuch as the substance
is ordinarily more to be regarded than the form, it
is quite generally held that, unless the statute ex-
pressly declares that a bond not executed in the form

prescribed shall be void, the statute will be construed to be directory only, and a substantial compliance with it will suffice.'' In section 269, the author mentions various informalties which would not invalidate an official bond: ''Thus, that the bond is not taken by the proper person or in the prescribed manner, or that it was not approved, or was not approved by the designated officer, or that it was not signed or acknowledged in the presence of a particular officer, or that it was given before the time specified, or not until the time fixed had expired, or was not stamped as required, or that the officer who gave it had not been sworn, is immaterial, and the bond, if otherwise perfect, will be enforced.'' Again, in section 270, it is said: ''So the fact that the officers charged with the duty of approving of filing the bond had not performed it will not defeat the validity of the bond, or release the sureties from it.'' Also, in section 313, it is declared: ''Approval being thus for the protection of the public only, it is well settled that where, by virtue of the bond, the officer has been inducted into the office, his sureties cannot escape liability for his defaults because the bond was not approved by the proper officer or was not approved at all.''

Applying to the facts alleged in the petition the law as announced by Mechem in the several sections, supra, it is patent that the lower court erred in sustaining the demurrer to the petition upon the ground last indicated. Indeed, our consideration of all the questions raised by the demurrer to the petition has constrained us to disagree with the conclusions reached by the learned judge of the circuit court, for we are of opinion that the demurrer should have been overruled.

Wherefore the judgment is reversed, and cause remanded for further proceedings consistent with the opinion.