Moss, &c. v. Rowlett, &c.

---

CASE 10—ACTION ON BOND OF ROAD CONTRACTOR FOR INJURIES RE-
CEIVED BY REASON OF DEFECT IN CULVERT—Nov. 27.

# Moss, &c. v. Rowlett, &c.

APPEAL FROM HENDERSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. AFFIRMED.

COUNTY ROADS—LIABILITY ON CONTRACTOR'S BOND LIMITED TO PEN-
ALTY NAMED—LIABILITY FOR INJURY TO TRAVELER.

Held:  1. Kentucky Statutes, sec. 3752, part of chapter entitled "Office and Officers," which provides that the recovery on a bond required by law "for the discharge or performance of any public or fiducial office, trust or employment" shall not be limited by the amount of the penalty named in such bond, does not apply to a bond executed by a road contractor for the faithful performance of his contract, and therefore the obligors in such a bond are liable only according to its terms, and to the extent of the amount specified therein.

| 112 | 121 |
| f120 | 82 |
| 112 | 121 |
| 126 | 128 |
| 112 | 121 |
| 135 | 688 |

2. Under Kentucky Statutes, sec. 4316, requiring a road contractor to give bond to the Commonwealth for the benefit of the county "in at least double the amount of the value of the work to be done, and conditioned for the faithful performance of the work within the prescribed time," and providing that for any breach of the bond "he shall be liable to a fine of from $10 to $100, and to action for damages by all parties aggrieved thereby," the contractor is not liable on his bond for injury to travelers from defects in the road, it being manifest that it was not intended that the liability of the contractor, where the system of working the roads by taxation is adopted by the fiscal court, shall be any greater than the liability of the overseer, where the overseer system exists.

JOHN F. LOCKETT, ATTORNEY FOR APPELLANTS.

This suit was brought against J. N. Rowlett, a road contractor, of Henderson county, and the sureties on his bond as such contractor to recover damages for an injury received by plaintiff in falling through a defective bridge or culvert on the road precinct controlled by said Rowlett, and which it is alleged he failed to keep in repair as such contractor. The plaintiff, in crossing said bridge, fell through by reason of its rotten condition, his horse which he was riding falling on him and so badly crippling him as to cause him great pain and suffering and render him a cripple for life. He claims $1,500 in damages.

No attempt was made in the answer to deny the manner or character of the plaintiff's injury, but the defendants rest their defense upon two grounds:

(1) That recovery could not be had upon the bond sued on because it was not a statutory bond, by reason of the failure of the road supervisor to properly take and attest it, as provided by the statute.

(2) Coupled, as claimed, with an understanding between the road supervisor and the principal in the bond, Rowlett, that upon the execution of the bond sued on another bond, previously executed, should be surrendered, and which first bond at the time of the injury sustained was received, had not so been surrendered to Rowlett.

We claim that the bond sued on is good as a common-law obligation, although not attested by the supervisor, and we contend that a mere outside understanding made between Rowlett and the supervisor as to the delivery up to him of a bond previously executed by them, should not avail to prevent a recovery by a person not a party to such understanding.

Moss, &c. v. Rowlett, &c.

The court held that the second bond, the one sued on, was delivered to Rowlett as escrow, to become operative upon the surrender of the bond for the first roads bid in by him, and gave the jury peremptory instruction to find for the appellees, which we claim was error, and which we ask this court to correct.

M. C. & G. D. GIVENS and YEAMAN & YEAMAN for APPELLEES.

### ISSUES AND AUTHORITIES CITED.

1. This court can not know, from this record, the nature or extent of the bond supposed to be sued on, it not being made a part of the record by the bill of exceptions.

2. Assuming that bond to be a part of the record, which it is not, yet the defendant's demurrer should have been sustained to the petition as amended.   Sec. 4316 Kentucky Statutes; Com. v. Davis, 9 B. M., 130; Hardin v. Owens, 1 Bibb, 214; Horne, &c., v. Mitchell, 7 Bush, 132.

3. The bond sought to be sued on, was merely an escrow and not the bond of defendants.   Whitaker v. Crutcher, 5 Bush, 624; Carswell's Exr. v. Rennick, et al., 7 J. J. Marshall, 281; Millett v. Parker, 2 Met., 613.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

The county roads in Henderson county are worked by taxation, under sections 4313-4325, Kentucky Statutes. By section 4313 a county supervisor of roads is to be appointed for a term of two years. By section 4314 he is to execute a bond, with sureties approved by the court, in double the amount of the bridge and road fund. By section 4315, after 20 days' notice in writing at each voting place in the county, he is empowered to let out to the lowest and best bidder, who shall give bond with surety, the working and keeping in order of the county roads, the work to be done as prescribed in the bonds; and by the consent of the county judge may designate certain roads and make contracts privately for the working of these. In March, 1898, the supervisor let out to appellee, J. N. Rowlett, eleven sections of the county roads at the price of $366.05. Two days later he let to Rowlett five other

sections for $113.75, making in all $479.80, and took from
Rowlett a bond with his co-appellees as sureties for the
faithful performance of his contract in a sum not to ex-
ceed twice the amount specified. After this, on June 16,
1898, appellant, Reuben E. Moss, Jr., while traveling along
one of the sections covered by the bond, driving three
horses ahead of him, fell through a culvert, and was pain-
fully injured. The culvert was about five feet deep. The
bridge over it was about twelve feet long, and gave way
because the sills under it were rotten, and not of suffi-
cient strength. The defect in the sills could only be seen
by going under the culvert. Wagons and other convey-
ances had been passing over it, and a binder had gone over
it a few days before. Appellee had six horses with him,
but all six were not on the bridge at one time. Two had
passed over. How fast he was traveling does not appear.
He filed this action against the contractor and his sure-
ties to recover $1,500 damages for his injuries.

As the bond was in double the sum specified, it only
bound the obligors on its face for the payment of twice
$479.80, or $959.60. The rule is settled that the recovery
on such a covenant must be limited to the amount of the
bond. Woods v. Com., 8 B. Mon., 112; Hughes' Adm'r v.
Wickliffe, 11 B. Mon., 202; Carter v. Thorn, 18 B. Mon.,
619; 4 Am. & Eng. Ency. Law (2d Ed.), 701. It is insisted
for appellants that this rule is changed by section 3752,
Kentucky Statutes, which is part of chapter 93, tit. "Office
and Officers." The section is so connected with 3751 and
3753 that it can not be properly understood unless read in
connection with them. The three sections, so far as
material, are as follows:

"The obligation required by law for the discharge of per-
formance of any public or fiducial office, trust or employ-

ment, shall be a covenant to the Commonwealth of Kentucky from the person and his sureties that the person shall faithfully discharge the duties of the office, trust or employment, but a bond or obligation taken in any other form shall be binding on the parties thereto according to its terms." Section 3751.

"Actions may be brought from time to time on any such covenant or bond in the name of the Commonwealth, for her benefit, or for that of any county, corporation or person injured by a breach of the covenant or condition, at the proper costs of the party suing, against the parties jointly or severally, together with the personal representatives, heirs and devisees or distributees of such of them as may be dead; and the recovery against principal and surety shall not be limited by the amount of the penalty named in such bond." Section 3752.

"No officer from whom a covenant is required shall enter upon the duties of his office until the same is given." Section 3753.

The covenant or bond referred to in section 3752 is evidently the obligation required by law for the discharge or performance of any public or fiducial office, trust, or employment provided for in section 3751, and which an officer from whom a covenant is required must execute, under section 3753, before entering upon the duties of his office. The words "any public or fiducial office, trust, or employment," do not, by any fair construction, include those who make contracts with a county for a valuable consideration. If a man should undertake with the county by contract to furnish fuel for heating the court house, or timber to repair a bridge, or rock to cover a highway, it can not be said that he would exercise any public or fiducial office, trust, or employment. The roads, under the statute, might

be let publicly or privately. The public contractor and
the private contractor stand precisely alike. To hold ap-
pellees within these sections, it would be necessary to hold
all persons who make contracts with the county, such as
for the erection of bridges, court houses, caring for blind
persons, and the like, to be within its operation. The
county as a *quasi* corporation, makes many contracts,
and the persons who contract with it stand just as they
do in contracts made by them with other persons, natural
or artificial. We conclude, therefore, that appellees are
liable under their bond only according to its terms and
to the extent of the amount specified in it. It remains to
inquire what this liability is. This must be determined by
the statute under which the bond was given, which is as
follows: "The contractor's bond required by the preced-
ing section shall be given to the Commonwealth for the
benefit of the county, with good surety, to be approved,
and attested by the supervisor or judge in at least double
the amount of the value of the work to be done, and con-
ditioned for the faithful performance of the work within
the prescribed time, and shall be returned by the super-
visor or judge to the county court at its next ensuing term,
which fact shall be noted of record, and the bonds kept
by the clerk of the court in his vault, labeled and marked
'Contractors' Bonds.' Similar bonds shall be taken for
work let at private contract, and shall be returned and
kept as the other contractor's bonds; certified copies of
said bonds shall be competent as evidence. For any breach
of a contractor's bond, he shall be liable to a fine of from
ten dollars to one hundred dollars, and to action for dam-
ages by all parties aggrieved thereby. Upon the filing of
the record of the supervisor or overseer, that any contract-
or has failed to comply with his contract, or upon informa-

tion or oath of any person, or on his own knowledge, that any road or bridge, embraced in said contract, is out of repair, the judge of the quarterly court of said county shall forthwith issue from and make returnable to his court a warrant, in the name of the Commonwealth, against the delinquent contractor, and when executed, proceed forthwith to try the same as other Commonwealth warrants are tried. The sureties of all delinquent road and bridge contractors shall be liable for all fines imposed and judgment for damages rendered against their principal under this act. All parties proceeded against, as hereinbefore provided, shall be entitled to a trial by a jury." Section 4316. It is insisted for appellants that as the statute provides that for a breach of the contractor's bond he shall be liable to a fine of from $10 to $100, and to action for damages by all parties aggrieved thereby, appellant Moss, who has been injured by reason of the defectiveness of the bridge, being aggrieved thereby, may maintain the action for damages. But, in view of the long-recognized rule in this State and the other provisions of the act, we can not concur in this conclusion. The bond is only required to be executed in double the amount of the value of the work to be done, and to be conditioned for the faithful performance of the work within the prescribed time. The act contemplates that a bond shall be given on each contract. The fact that in this case a number of contracts were made, and all included in one bond, is not material. We must determine the legislative intent from the language it used, having in mind the law of the State as it then stood. It will be observed that the average value of the work to the section undertaken by Rowlett was about $30. If the Legislature had in mind making the contractor liable for damages such as are here sued for,

it is incredible that it would have provided a bond so inadequate, which on its face would lead the obligors to sign it without suspicion that they were incurring such a liability. If appellant Moss may recover on this bond, then every one who is delayed in his business or put to expense by reason of defects in the road may likewise recover; and the result would be that these bonds would be more onerous than perhaps any other known to the law, notwithstanding the fact that they are only conditioned for the faithful performance of the work within the prescribed time in double the value of the work, which on this road was perhaps not $75. Previous to the passage of this act, neither the judge or justices composing the county court nor the county or the road overseer were liable to an action for damages by a traveler on a highway injured by reason of a defect in it. Wheatly v. Mercer, 9 Bush, 704; Hite v. Whitley County Court, 91 Ky., 168, 12 R., 764, 15 S. W., 57, 11 L. R. A., 122. Chapter 110, Kentucky Statutes, provides two systems of working the roads—one by an overseer, as before; the other by taxation. In the latter system, the supervisor and the contractor seem to take the place of the overseer under the old system. The duties required of the contractor are substantially the same as those of the overseer. Kentucky Statutes, section 4311. Section 4306 reads thus: "The fiscal court of each county shall have general charge and supervision of the public roads and bridges therein, and shall prescribe necessary rules and regulations for repairing and keeping the same in order and for the proper management of all roads and bridges in said county under and subject to the provisions of this act. The public roads shall be maintained either by taxation or by hands allotted to work thereon or both in the discretion of the fiscal court of the respective counties as hereinafter provided." As

the contractor simply takes the place of the overseer, it would seem that the Legislature contemplated by section 4316 the requirement of a bond from him for the perform· ance of the same duties, and not with a view of extending his liability beyond the overseer's. It is very important to the counties where the roads are worked by taxation that the work should be done at reasonable rates, and, if onerous liabilities were laid upon the contractor, it would entirely defeat the purpose of the statute. The Legisla· ture does not appear to have had in mind anything more than the substitution of a bonded contractor for an over- seer. We conclude, therefore, that the words, "action for damages by all parties aggrieved thereby," do not refer to a cause of action which could not be maintained against a county overseer. In Coleman v. Eaker (111 Ky., 101), (23 R., 512), (63 S. W., 484), it was held that the supervisor was not liable on his bond given under section 4314 for damages in cases like this. The covenants of the two bonds are not dissimilar in character, and we think the same rule should apply to both. The thing in the mind of the Legislature was the working of the county roads. No liability had existed for defects in the roads causing injury to travelers. The substitution of the tax system for the labor system should not be held to change the rule on this subject without dis- tinctly expressed legislative intention to do so, for in the end the liability would indirectly fall on the county in the increased price that would have to be paid the contractor. It is evident the Legislature supposed that a bond by the contractor in double the amount of the work to be done would furnish a sufficient indemnity. This shows that the bond looked primarily to the work, and the Legislature did not design to extend the liability of the contractor to

such causes of action as that here sued for. The liability of a surety is of strict law, and is not to be stretched by implication.

Judgment affirmed.

Judge DuRelle dissents from the opinion on the second question decided, but concurs in the first. Judge Guffy dissents on both.

Dissenting opinion by Judge Guffy:

The appellant instituted this action in his own name, and in the name of the Commonwealth, for his use and benefit, against the appellees. A demurrer was sustained to the petition, after which the appellant filed an amended petition, and defendant's demurrer thereto was overruled. The petition as amended substantially avers that J. N. Rowlett became an accepted bidder for the repairing and keeping in order certain portions of public roads and certain bridges and culverts of Henderson county, and, for the faithful performace of his contract with J. H. Tillotson, James Haynes, G. L. Reid, and W. A. Barnett, executed bond to the Commonwealth of Kentucky for the faithful performance of his duty as to the repairing and keeping in proper condition for a specified time the roads and bridges as named in said bond; precinct No. 76 of the roads of Henderson county being one of the road divisions or precincts included within said contract and bond. It is further alleged that defendants had broken their contract, in this: that said Rowlett failed to repair, work, or put said road, or culverts and bridges under 20 feet on same, in good condition for the general travel or hauling from the date of his said contract, Marsh 8, 1898, to the date of the injury hereinafter complained of by plaintiffs, to-wit, June 16, 1898, and failed to repair and work said road

of precinct No. 76, culverts and bridges under 20 feet in-
cluded, so that same was in good or safe traveling condi-
tion on the 16th of June, 1898, and it was not in good
or safe traveling condition at said time, and the said de-
fendants permitted a culvert or bridge about 50 yards
on said road from where same intersects the Knoblick
road, it being a bridge or culvert about 12 or 14 feet in
width, and 4 or 5 feet in depth, to remain out of repair, and
dangerous to travel thereon, and that it so continued from
date of contract, March 8, 1898, to the date of plaintiff
R. E. Moss' injury, 16th of June, 1898.  The petition then
particularly describes the defects and condition of said
bridge and culverts, and charged that it was gross negli-
gence upon the part of the defendants, and that defendants
could easily discern the same by examination from the
sides or from beneath said bridge, but same was not noti-
ceable to a traveler going from either end of said bridge
or culvert.  The petition then proceeds to show that, by
reason of said failure to repair said bridge or culvert, the
plaintiff was severely injured while passing over the bridge,
without any fault on his part, for which he prayed judg-
ment for $1,500 and $25 doctor's bill.  The concluding stip-
ulation of the bond reads as follows:  "For the faithful
performance of the above contract we are bound to the
Commonwealth of Kentucky, for the benefit of Henderson
county, in the sum not to exceed twice the amount speci-
fied in this contract."  The amount that Rowlett was to
receive for the services agreed to be rendered was $474.80.

The substance of the defense is that defendants signed
a bond on the 8th of March, 1898, very like the one de-
scribed in the petition, but it is not the same contract or
bond sued on.  That on the 8th of March, 1898, one Samuel
Crawley let out to Rowlett to work in the roads in sec-

tions as follows: 56, 54, 27, 23, 24, 26, 67, 82, 71, 74, and 97—at the price of $366.05; which contract was signed by defendants, delivered to and approved and accepted by said Crawley, and filed by the county clerk, and is now in his office, and in full force, and is for $366.05. Some two days after the execution of this bond to Crawley, he let to Rowlett other sections of roads to be worked, to-wit, Nos. 76, 57, 58, 78, 102, for $113.05. Then Crawley proposed to Rowlett to give another bond, for $479.80, for all the roads, and he would surrender to said Rowlett the $366.05 bond, to be canceled. To this proposition defendants consented, and it was the sole condition and consideration for said second bond. Defendants each signed a bond or paper like the one filed, under the express condition that the other bond was to be canceled before the new one should take effect. Said paper was signed by each defendant in his home, not in the presence of, nor did they acknowledge the same before, Crawley, nor did he attest the same, nor ever offered to surrender the original bond; hence they say they never executed the bond described by the copy filed with the petition, and the one sued on is void. The second paragraph reads thus: "They say they have no knowledge or information sufficient to form a belief as to whether or not the plaintiff has paid $25 or other sum for being cured of his hurts, if any he received, nor have they such knowledge or information as to the extent of his injuries, if any he received." The third paragraph traverses defendants' knowledge of the unsafe condition of the bridge, and charges that plaintiff had full knowledge of the condition of the bridge before he rode on, and if he was hurt it was in part his own fault in going on said bridge, knowing of its unsafe condition.

The reply may be considered as a traverse of the execu-

tion of the first bond referred to by defendants. It is al-
leged that road precinct No. 76 and others were let out on
the date following the precincts first mentioned, and were
to be kept in good condition for the year 1898 and part of
1899. The conditions as to the signing of the bond sued on,
as stated by defendants, are traversed. Plaintiff also de-
nied knowldge of the unsafe condition of the bridge. It
may be further stated that the pleadings show that Row-
lett entered upon the discharge of his duties, and presump-
tively received the sum of money specified in the contract
sued on.

At the conclusion of plaintiffs' evidence, the defendants
moved the court for peremptory instructions, which mo-
tion was sustained, and the court gave to the jury the
following instruction: "The plaintiffs having failed to
establish their rights to recover, you will find for the de-
fendants." The jury thereupon returned the following
verdict: "We, the jury, find for the defendants. [Signed]
S. E. Hicks, Foreman." The court thereupon dismissed
plaintiffs' petition, to all of which plaintiffs excepted, and
prayed an appeal to the court of appeals, which was
granted. Plaintiffs' motion for a new trial having been
overruled, they prosecute this appeal.

The appellee insists that the judgment should be
affirmed for three reasons: First, upon the idea that the
bond is not part of the record, and hence not before the
court; second, if the bond be a part of the record, yet the
demurrer should have been sustained to the petition as
amended; third, because the bond sought to be sued on was
merely an escrow.

As to the first proposition, we think the bond constitutes
a part of the petition, and is part of the record, and hence
is before this court.

As to the second ground, it seems that appellee is of the opinion that the demurrer should have been sustained because, at most, the bond sued on is only a common-law bond, and for that reason no liability attaches to the surety for the injury complained of. It would seem from the argument that appellees do not contend that they would not be liable if the bond had been properly attested, and otherwise properly given and accepted, for the injury complained of, provided the negligence of appellee Rowlett caused the injury. Chapter 110 Kentucky Statutes, provides for the letting of such contracts as appear to have been entered into in this case, and provides for the execution of the bonds, and liability and duties of the contractor. Section 4316 provides that the contractor's bond required by the preceding section shall be given to the Commonwealth for the benefit of the county, with good surety, to be approved and attested by the supervisor or judge, in at least double the amount of the value of the work to be done, and conditioned for the faithful performance of the work within the time prescribed, and shall be returned by the supervisor or judge to the county court at its next ensuing term, which facts shall be noted of record, and the bonds kept by the clerk in his office vault, labeled and marked "Contractors' Bonds." It is further provided in said section as follows: "For any breach of a contractor's bond, he shall be liable to a fine of from ten dollars to one hundred dollars, and to action for damages by all parties aggrieved thereby. . . ." It is further provided in said section as follows: "The sureties of all delinquent road and bridge contractors shall be liable for all fines imposed and judgment for damages rendered against their principal under this act. All parties proceeded against, as hereinbefore provided, shall be entitled to a trial by a jury." Section 3751, Kentucky Stat-

utes, provides that all obligations required by law for the
discharge or performance of any public or fiducial office,
trust, or employment shall be a covenant to the Common-
wealth of Kentucky from the person and his sureties that
the principal shall faithfully discharge the duties of the
office, trust, or employment but a bond or obligation taken
in any other form shall be binding on the parties thereto
according to its terms.  Section 3752 reads as follows:
"Actions may be brought from time to time on any such
covenant or bond in the name of the Commonwealth for her
benefit or for that of any county, corporation, or person in-
jured by a breach of the covenant or condition, at the pro-
per costs of the party suing, against the parties jointly or
severally, together with the personal representative, heirs
and devisees or distributees of such of them as may be
dead; and the recovery against principal and surety shall
not be limited by the amount of the penalty named in the
bond.   Nor shall the recovery be restricted only to such du-
ties or responsibilities as belong to the office, post, trust or
employment at the date of the covenant or bond, but may
include any duties or responsibilities thereafter imposed by
law or lawfully assumed."  It seems clear to us, by the
very terms of the statute, supra, that, if Rowlett executed
such bond as the law required, he and his sureties would be
bound for the damages sustained by plaintiff, provided they
were caused by the culpable negligence of Rowlett, and pro-
vided, further, that plaintiff was not guilty of such contri-
butory negligence, as but for his negligence the injury
would not have occurred.  It is perfectly manifest that the
bond sued on was in fact executed by the appellees, and
that it was in fact accepted by Crawley, the commissioner,
and was returned to the clerk, and placed in a bundle or
box, and marked and labeled "Contractors' Bonds," as re-

quired by law. It does not appear whether or not the execution of the bond was noted of record. We are not inclined to the opinion that the bond in question stands upon the same footing as the bond of a sheriff or guardian; but whether this be so or not, and whether it be considered as a statutory or common-law bond, we are of opinion, under the doctrine as frequently announced by this court, that the sureties are bound. In Cotton's Guardian v. Wolf, 77 Ky., 238, it was held that the sureties in a guardian's bond that was utterly void as a statutory bond, but good as a common-law bond, were liable for all moneys, etc., that came into such guardian's hands by reason of the execution of the bond in question. This doctrine rests chiefly upon the ground that the sureties by the execution of the bond enabled the guardian to get possession of the funds. The same is true in regard to the bond in suit. The execution and acceptance by the commissioner, although he did not attest it, enabled Rowlett to obtain the contract and all the benefits accruing therefrom. Hence it follows that he and his suretie smust answer for the damage resulting from his failure to discharge his duties, if he did fail. The object and purpose of the law requiring a commissioner to attest the bond was for the purpose of identifying it, and as evidence that it was in fact executed. His attestation was not necessary to the validity of the bond, if in fact it was executed. It appears in this case that the commissioner did not see either of the bonds executed; hence he could not properly attest the same, because his attestation would mean that the parties had signed the bonds, or, at least, had acknowledged them, in his presence. It is clear from the evidence in this case that the acceptance of the bond in suit, and the whole arrangement in regard thereto, was for the accommodation of the appellees, to save them from the

trouble of appearing before the commissioner and signing
the bond in his presence. If it be contended that the bond
only obligated the signers to pay double the amount which
Rowlett was to receive for the services, and therefore their
liability could not exceed that amount, it is sufficient to
say that the statute under which the bond was executed
fixed the liability of the signers, and that such statute must
be considered as if written in the bond. Moreover, it is
nowhere provided in the statute that the liability of the
obligors in the bond shall not be double the amount to
which the contractor is entitled for performing the work
undertaken by him. It is worthy of note that the statute
requires that the bond shall be given to the Commonwealth
for the benefit of the county, with good security, and at
least double the amount of the work to be done. It may be
that Henderson county could not recover more than double
the amount which the contractor was to receive for his ser-
vices. But that in no wise affects the right given to other
parties by the same section to recover damages sustained
by failure of the contractor to perform his duties, nor in
any manner conflicts with section 3752, Kentucky Statutes.

The third contention, that the bond was an escrow, is
not sustained by the testimony or the law in this case. It
nowhere appears that the defendant ever demanded a re-
turn of the original bond after the acceptance of the sec-
ond, but, on the contrary, it is pretty evident it would have
been returned if demanded. Moreover, the return of the
old bond to Rowlett was of no value to him. It would not
have relieved him from any liability, nor did its retention,
if it was retained, increase his liability, because the new
bond contained all of the covenants and requirements con-
tained in the old bond, with the additional covenants which
were agreed to by all of the appellees, as is clearly shown.

No new parties were added to the new bond, nor any omitted that had signed the old one. If it clearly appeared, which it does not, that, by the terms of the agreement between Rowlett and Crawley, the new bond was not to be effective until the old one was surrendered, still there is no evidence of a breach on Crawley's part; and, besides, as before stated, leaving the old bond, which, like the new, was not attested by anybody, in the clerk's office, could not work any possible injury to the appellees. It seems, therefore, clear to us that the peremptory instruction should not have been given.

I think that the majority opinion nullifies a plain provision of the statute.