George Schisel, Appellant, v. L. H. Marvill et al., Appellees.

BONDS: Statutory Bonds—Insertion of Nonstatutory Obligations—
1 Effect. The liability of a surety on a *statutory* bond is measured and defined by the statute which requires the bond. In other words, common-law or nonstatutory obligations inserted in such a bond

must be treated as surplusage. A statutory bond given to a county by a contractor engaged in public highway improvement does not, either under Sec. 1, Ch. 347, 38 G. A., or under Sec. 11, Ch. 237, 38 G. A., or under Sec. 1527-s18, Code Supp., 1913, contemplate liability for a *personal* injury resulting to a traveler, consequent upon a collision on the highway between the traveler and the employees of the contractor.

**BONDS: Statutory Bonds—Authority to Vary or Add to.** The authority of the state highway commission to ''prescribe'' the ''form and conditions'' of bonds for highway improvements (Sec. 11, Ch. 237, 38 G. A.) does not authorize the commission to insert or cause to be inserted in such bonds conditions other or different than those conditions which are otherwise clearly designated and fixed in the statute.

**BONDS: Actions—Nonintended Party Plaintiff.** The statutory provision that all persons have a right of action on a public bond *if they were intended to be secured there'by* necessarily does not embrace a party who seeks to enforce a liability not contemplated by the bond, or a liability inserted in the bond without authority of law.

**CONTRACTS: Construction—Liability for Negligence.** Contract and bond of a public highway contractor reviewed, and held to be confined substantially to the conditions required by statute, and therefore not to embrace liability for *personal* injury sustained by a traveler, consequent upon a collision on the highway between the conveyance of the traveler and that of the employees of the contractor.

**BONDS: Statutory Bonds—Nonstatutory Obligations.** Specifications in a public highway improvement contract imposing liability on the contractor for damages to the public in general, consequent upon the contractor's negligence, and requiring the contractor to carry liability insurance to cover such liability, are not required by statute; and the surety in the performance bond is in no wise responsible for a violation thereof.

*Appeal from Winnebago District Court.*—M. F. EDWARDS, Judge.

MARCH 13, 1924.

REHEARING DENIED OCTOBER 17, 1924.

THIS is an action on a contractor's bond, by a person not a party thereto, to recover damages for personal injuries resulting to plaintiff from the tortious or negligent act of the contractor's employees. There was a demurrer to the petition, which was sustained. The plaintiff appeals.—*Affirmed.*

*Thompson, Loth & Lowe,* for appellant.

*Blythe, Markley, Rule & Smith* and *Tom Boynton,* for appellees.

EVANS, J.—I. It appears from the petition that the defendant Marvill entered into a contract with the supervisors of Winnebago County for the graveling of certain highways. The consideration of the contract was $24,508. Pursuant to the statute, a contractor's bond for such exact amount was given for the full performance of the contract. The defendants Larson and Dray were employees of the contractor, and the other defendants were sureties on the contractor's bond. The petition avers that the employees Larson and Dray were engaged in hauling gravel over the highway, in performance of the contract; that Dray was driving easterly, and that Larson, some distance away, was driving westerly; that both were driving at an excessive rate of speed, and in excess of thirty miles an hour; that the plaintiff was proceeding easterly over the same highway, and that he overtook said Dray; that he undertook to pass the said Dray on the highway, but was unable to do so because of Dray's excessive speed; that, while so proceeding alongside of Dray and on his left side, he met Larson with his truck, coming from the east; that he was unable to turn to the right and escape contact with Larson, because of the presence of Dray's truck; that a collision resulted, at the point of meeting with Larson; that such collision was wholly the result of the negligence of Larson and Dray; and that the plaintiff was damaged thereby in the sum of $10,000. The question presented is whether the surety on the contractor's bond is liable to the

1. BONDS: statutory bonds: insertion of nonstatutory obligations: effect.

plaintiff for these damages. The question as presented divides itself into three phases:

(1)  May liability be predicated upon terms and conditions of a statutory bond which are beyond the requirements of the statute?

(2)  Does the statute by its terms contemplate a liability of the surety on a contractor's bond for such damages as are claimed herein?

(3)  Does the statutory bond given herein by its terms contemplate such liability?

The bond under consideration, without any doubt, is and purports to be a statutory bond. Whether a statutory bond may be voluntarily enlarged so as to include other binding conditions and penalties not provided by statute is a question upon which the great body of authority is in hopeless conflict. Many authorities hold that such additional obligations may be enforced as common-law obligations, voluntarily assumed. The weight of authority, however, in our judgment, is that a statutory bond is a creature of the statute, and that common-law obligations cannot be added to it. There are many cogent reasons for this holding, but we shall not take the time or space to enumerate them. As in this case, statutory bonds are usually taken pursuant to statute by public bodies whose duties in relation thereto are defined by the statute, and whose powers in relation thereto do not extend beyond the terms of the statute.

The question at this point received our careful consideration in *United States Fid. & Guar. Co. v. Iowa Tel. Co.*, 174 Iowa 476. In that case, we aligned ourselves with what we deemed to be the weight of authority and reason. The following excerpt from the opinion of Weaver, J., in that case will be sufficient indication of our holding and the reasons therefor:

"In no case cited to us, and in none falling under our observation, where a statute provides for the giving of a bond and prescribes its conditions, and the bond in the decided case contains all the statutory conditions, has it been held that the inclusion in such bond of other or nonstatutory conditions has the effect to convert it into a common-law obligation. Indeed, the entire trend of the cases is to the contrary. In the first

place, where the bond is given as a statutory obligation, the court will construe it, so far as it properly may, to sustain the statutory purpose; and even though it be informal or contain terms which, considered alone, might indicate an absolute, rather than a contingent, liability, yet, if it be clear that the intention was to comply with the statute, it will be so treated and enforced. This was the distinct holding in *Field v. Schricher,* supra [14 Iowa 119]. It is, indeed, thoroughly well settled that in such, if the added or nonstatutory conditions are separable from those required by the statute, they will be treated as surplusage, and of no effect. [Citing many authorities.] To quote the language of this court in the *Field* case: 'When, from the language used, a legitimate statutory object and purpose can be seen to have been intended, it will not be presumed that the parties voluntarily made a bond good only at common law.' And it would be an anomalous holding to say that a bond may be enforced as a statutory obligation and also as an obligation at common law.''

The effect of this holding is that the liability of a surety under a statutory bond is measured and defined by the statute; and that a construction of the statute is a construction of the bond. In such a case, the statute becomes a guide to the surety as to the extent of the obligation assumed. Manifestly, if a bond required by statute for purposes defined by statute and in an amount fixed by the statute may be extended voluntarily to cover other obligations than those required by the statute, such extraneous obligations might of themselves absorb the full penalty of the bond and defeat the statutory purpose for which the bond was required. If it be found, therefore, that the purported obligation of the bond by its terms extends beyond the limits fixed by the statute, such excess provisions will be deemed surplusage, and the bond will be enforced in accord with the statute. The authorities are fully reviewed in the cited case, and we shall not repeat them.

II. Does the statute by its terms contemplate a liability of the surety on a contractor's bond for such damages as are claimed herein? In setting forth herein the pertinent sections of the statute, we shall cite them under the numbered sections

of the Compiled Code. This is not strictly a proper course, and we resort to it only from the pressure of present convenience, as conforming to the course largely adopted in the briefs of counsel. Section 8427, Compiled Code, 1919 (Section 1, Chapter 347, Acts of the Thirty-eighth General Assembly), is as follows:

"Whenever any public body, board, committee, officer or other public representative now or hereafter empowered by law to enter into a contract, for and on behalf of the public, for the purpose of constructing any public building, or for the purpose of making any public improvement, or for the making of any additions thereto, or for the finishing, furnishing or repairing of any such buildings or public work, such body, board, committee, officer or other public representative, whenever the contract price is in excess of $1,000, shall require as a condition precedent to the making of such contract that the person, firm or corporation to whom the contract is awarded furnish and file a bond, as hereinafter provided, in a sum of not less than the contract price, the amount to be determined by those representing the public, signed by the contractor and a responsible surety company authorized to do business in Iowa, which bond shall run to said body, board, committee, or other public representative, for its use and benefit and for the use and benefit of all persons, firms and corporations who shall perform any labor or furnish any material, including fuel, in the carrying out of such public contract, and shall have as one of its conditions, the following paragraph:

" 'Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect.'

"The foregoing condition shall at all times be additional to those conditions and requirements now or hereafter *required* by statute to be a part of such bonds. The provisions and requirements of this section and the three following sections shall not be modified or annulled by contrary provisions in any such bond or contract."

Section 2919, Compiled Code, 1919 (Section 11, Chapter 237, Acts of the Thirty-eighth General Assembly):

"In the award of contracts, due consideration shall be given not only to the prices bid, but to the mechanical and other equipment, and financial responsibility of the bidder and his ability and experience in the performance of like or similar contracts. The board may reject any or all bids and may readvertise for bids, or, with the written consent of the state highway commission, may let by private contract, or with such consent may proceed to the construction (except in case of paving) by day labor at a cost not to exceed the lowest bid received. In any event, all contracts entered into under the provisions of this chapter shall be approved by the state highway commission before they shall become effective. The form and conditions of all contracts, the form and conditions of all bonds taken or required for the full performance or maintenance of all work, shall be prescribed by the state highway commission. All contracts for performing paving work or furnishing material therefor shall be in writing and shall be secured by a bond for the faithful performance thereof, which bond shall be so drawn as to fully secure the proper county from defective workmanship or material for five years after the completion of contract."

Section 2885, Compiled Code (Section 1527-s18, Code Supplement, 1913):

"The board of supervisors shall require all contractors to give a bond for the faithful performance of the contract, in such sum as the board of supervisors may deem necessary. The surety on any bond given to guarantee the faithful performance and execution of any work shall be deemed and held, any contract to the contrary notwithstanding, to consent without notice:

"1. To any extension of time to the contractor in which

to perform the contract when each particular extension does not exceed 60 days.

"2. To any change in the plans, specifications or contract when such change does not involve an increase of more than 20 per cent of the total contract price, and shall then be released only as to such excess increase.

"No contract shall be valid which seeks to limit the time to less than 5 years in which an action may be brought upon the bond covering concrete work nor to less than one year upon the bond covering other work."

It will be seen from Section 8427, supra, that the bond required shall run to the public body "for its use and benefit and for the use and benefit of all persons, firms and corporations who shall perform any labor or furnish any material, including fuel, in the carrying out of such public contract." It will be noted also, from the same section, that it sets forth in part the form of the bond, and that such form deals with the obligation of the contractor to third persons, as follows:

"And shall pay all persons who have contracts directly with the principal for [or] subcontractors for labor or materials."

In a word, there is no affirmative provision in the statute which purports in any manner to extend the obligation of the bond to such liability as is sued upon herein.

It is urged, however, that the enumerations of the statute are not exclusive, and that they do not purport to exclude other liabilities than those enumerated in the statute. This contention ignores the rule of *ejusdem generis* as a rule of construction, whereby an enumeration in a statute is ordinarily deemed exclusive. It also ignores the fundamental distinction between a statutory bond and a common-law bond. If a bond is to be deemed a statutory bond, it is because it is given in obedience to the statute and pursuant to the statute and in accord with the statute. To add to the bond other liability to other persons is necessarily to diminish the protection afforded by the bond to those enumerated persons for whose use and benefit the bond is required. This enumeration not only occurs in the condition set forth in form, but it appears also in the body of the

statute, quite independently of the form of the condition set forth therein.

It is further urged that, under Section 2919 of the Compiled Code (Section 11, Chapter 237, Acts of the Thirty-eighth General Assembly), the form and conditions of all contracts and bonds are to be prescribed by the state highway commission. Such section provides:

"The form and conditions of all contracts, the form and conditions of all bonds taken or required for the full performance or maintenance of all work, shall be prescribed by the state highway commission."

The foregoing was not a delegation of legislative power to the highway commission. It was required to formulate contracts and bonds. It was not thereby permitted to ignore the statute. This duty is confined to bonds "taken or required for the full performance or maintenance of all work." There is no implication in this language that the highway commission may incorporate *in any such bond* a liability such as is sued upon herein.

2. BONDS: statutory bonds: authority to vary or add to.

It is further urged that additional power is conferred upon the highway commission by Section 11, Chapter 237, Acts of the Thirty-eighth General Assembly, which provides as follows:

"In any event, all contracts entered into under the provisions of this act shall be approved by the state highway commission before they shall become effective. The form and conditions of all contracts, the form and conditions of all bonds taken or required for the full performance or maintenance of all work, shall be prescribed by the state highway commission. All contracts for performing paving work or furnishing material therefor shall be in writing and shall be secured by a bond for the faithful performance thereof, which bond shall be so drawn as to fully secure the proper county from defective workmanship or material for five (5) years after the completion of contract."

The duty of approval by the state highway commission is not a permission to depart from the statute. It is significant that the emphasis of this enactment is that the bond to be taken shall be for the faithful performance of the contract, and shall

be drawn so as to "secure the proper county from defective workmanship or material."

Appellant also urges upon our consideration Section 3467, Code of 1897, which provides as follows:

"When a bond or other instrument given to the state or county or other municipal or school corporation, or to any officer or person, is intended for the security of the public generally, or of particular individuals, action may be brought thereon in the name of any person intended to be thus secured, who has sustained an injury in consequence of a breach thereof, except when otherwise provided."

This section is not available to the plaintiff unless he can show that he is a "person intended to be thus secured." He is not included in any of the enumerations which we have already considered. He is not, therefore, a person "intended to be secured" by the other statutes which we have considered, or by the statutory bond which they provide. The foregoing comprises all the statutory provisions which pertain to the question before us. We find nothing therein which assumes in any way to cover a case of such liability as is presented by plaintiff's petition.

3. Bonds: actions: nonintended party plaintiff.

III. Does the statutory bond given herein by its terms contemplate such liability? The contract proper, signed by the public officials and by the contractor, is brief, and conforms to the requirements of the statute. Its only provision relating to liability to third parties is as follows:

4. Contracts: construction: liability for negligence.

"That the party of the second part further agrees to pay all just claims for material, supplies, tools, labor, and all other just claims filed against him or any of his subcontractors in carrying out the provisions of the within contract and further agrees that his bond shall be held to cover all *such claims.*"

Looking to this instrument alone, it contains nothing which can be construed as a purported promise to pay the claim of the plaintiff. This is not saying that the defendant Marvill is not liable to the plaintiff for the damages claimed as having resulted from the tort of his servants. For the purpose of this discussion, we shall assume him to be liable; but his liability is not contrac-

tual. Quite regardless of the contract, he is liable at common law for the tort, if any, of his servants. His liability is neither greater nor less nor different because of his contract with the public body. If his servants had been, for the time being, hauling his corn to market, instead of hauling gravel, such defendant's liability would be precisely the same. We may as well note here that the collision complained of did not result from any defect in the highway nor from any nuisance created thereon nor from any defect of material or construction or contractual performance. All the parties to the collision were, at the time, travelers, using the highway as such. It does not appear that the accident happened at a place on the highway which was undergoing construction or repair or a graveling process. All that is material now is to note that there is nothing in the contract proper which creates any contractual relation between the contractor and plaintiff, as holder of the claim presented.

Turning now to the bond. This also is brief, and conforms almost literally to the statutory provisions hereinbefore set forth. It contains the following provision:

"Now, therefore, the condition of this obligation is such that, if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure to do so, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal or subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect; and if the said L. H. Marvill, as principal, shall in all respects fulfill his said contract according to the terms and tenor thereof, and shall faithfully discharge the duties and obligations therein assumed, then the above obligation is to be void and of no effect; otherwise, to be and remain in full force and virtue in law. * * *

"3. That no contract shall be valid which seeks to limit the time to less than five years in which an action may be brought, on account of defective workmanship or materials,

upon the bond covering the work. This bond is to be considered a performance bond, and not a maintenance bond, and secures to the county the right to recover from the contractor at any time within five years for material or labor entering into paving work not in accordance with the contract, specifications or plans. The contractor does not, however, guarantee to maintain the work for five years.''

What we have already said as to the statutory provisions is applicable to the provisions of the bond, and it need not be repeated. We pass to the specifications. These became a part of the contract. They furnish the real basis of appellant's contention. Section 40 thereof provides as follows:

''When a road is closed it shall be the duty of the contractor to provide and maintain such barriers and watchmen as are necessary to prevent travel over the closed portion. The contractor shall provide proper barricades and watchmen to prevent traffic over newly constructed portions of the road. The contractor will be held responsible for any damage resulting from traffic on newly completed portions of the road.''

Appellant lays some stress upon the last sentence, as creating a contractual liability of the contractor to the plaintiff. This sentence must be read in connection with the preceding context. It has reference solely to damages resulting to the highway by permitting traffic to enter prematurely upon the completed portions.

Reliance is had upon Section B-43, which provides as follows:

''The contractor shall assume all responsibility for damages sustained by persons or property due to the carrying on of his work. He shall indemnify and save harmless the state and county and all of their officers or agents from all 5. Bonds: statutory bonds: nonstatutory obligations. suits, actions, or claims of any character brought for or on account of any injuries or damages sustained by any persons or property by or from the said contractor, or in consequence of any neglect in safeguarding the work, or on account of any acts or omissions, neglect or misconduct of the said contractor. The contractor under these specifications *shall carry liability insurance to indemnify the*

*public for injuries* sustained by reason of the carrying on of his work, and to *meet the requirements of the Iowa Workmen's Compensation Law.* Responsibility of the contractor for all damages or injuries to the traveling public on any portion of the road shall not be released until the work on such portions has been approved by the engineer.''

The foregoing presents appellant's most plausible ground. If, at any stage of the proceeding, any contractual liability has been created as between the contractor and the plaintiff, it must be made to rest upon this section of the specifications, and upon nothing else. Section B-71 provides:

''Claims Against Contractor. The contractor guarantees the payment of all just claims for material, supplies, tools, labor, and all other just claims against him, or any subcontractor, in connection with this contract, and his bond will not be released by final acceptance and payment by the board unless all such claims are paid or released.''

Section B-43 is broad in its scope. The contractor purports thereby to ''assume all responsibility for damages'' and to ''indemnify and save harmless'' the county and its officers and agents from all claims of any character for damages in consequence of any neglect or misconduct of such contractor, and to carry liability insurance to indemnify the public for injuries sustained by reason of the carrying on of his work and to meet the requirements of the Iowa Workmen's Compensation Law. There is no other like provision to be found, either in the statute, in the contract, in the bond, or in the specifications herein. The contractor agrees to ''indemnify the public for injuries.'' The *method of indemnity* is expressly specified as ''liability insurance.'' Without doubt, the liability insurance referred to herein has no reference whatever to the bond in suit, which has been repeatedly designated by all the parties as a *performance bond* only. The argument for appellant at this point is that the contractor did not furnish liability insurance, and that he thereby breached his contract, and that, because of the breach of his contract, the surety on the performance bond became liable. It is argued also that, if the contractor is liable under any provision of the contract or specifications, then the question as to

whether there was one bond or two would be immaterial, and that the surety on either could be held liable. The argument is not sound. The failure to take out liability insurance was not a breach of the contract, in any legal sense. It was a condition precedent to the acceptance of his bid by the board of supervisors, and to the approval of the contract by the highway commission. The bid was accepted and the contract was approved without requiring liability insurance. The statute did not require such an undertaking. If the board of supervisors and the highway commission had power, nevertheless, to require it as a condition to the approval of the contract, they had equal power to waive it. The undertaking of this Section B-43 resolves itself into two parts: (1) To "indemnify and save harmless the state and county from all suits," etc.; (2) to "carry liability insurance to indemnify the public for injuries," etc.

If the contractor had obtained liability insurance, pursuant to this provision, would the plaintiff still claim that he had a right to elect to proceed against the surety on the other bond? Liability insurance is not a suretyship. The liability created by it is a primary one, and not a secondary; whereas the liability of a surety on a bond is secondary, and not primary. The question at this point is not whether the contractor is primarily liable to this plaintiff. We are assuming that he is. The question is whether the *surety on his bond* is liable beyond the terms of the bond because the contractor failed to carry liability insurance, and because the public authorities permitted the contract to go into effect without such liability insurance. It is enough at this point to say that, inasmuch as the requirements of Section B-43 are not statutory, and inasmuch as the bond signed by the surety was a statutory bond, liability thereunder cannot be extended beyond the statutory requirements. This conclusion is inevitable from the plain terms of all the provisions of the contract and bond and specifications save only Section B-43. It is also significant that the final section of the specifications, being Section B-71, repeats the former enumeration of the kind of liability chargeable to this bond. These repeated enumerations, as contained in statute and bond and specifications, would have to be wholly ignored, as defining the scope of the liability of the

bond, in order to hold that the plaintiff's claim was within its contemplation. Whether the public officials could exact a valid common-law bond, to indemnify the public against such damages as are herein involved, is a question upon which we do not pass.

Counsel lays stress upon the case of *Grennell v. Cass County,* 193 Iowa 697, and urges it as decisive of the question presented in this case. This is a misconception of the purport of that case. The question of the liability of the bond was not involved in that case. What was therein held was that an independent contractor who contracts to make road improvements is not exempt from liability for his negligent acts; that the fact that the county and its agents would not be liable for a like negligence does not operate as a shield to the independent contractor. True, the discussion of the opinion argues the question from various viewpoints and upon various hypotheses. The liability of a tort-feasor is not contractual. A contract may disclose the nature and scope of a duty and become admissible in evidence for that reason. But damages for the negligence or breach of duty toward third parties are not measured by the contract, nor are they commensurate with the contract or limited by its consideration. In the *Grennell* case, it was an important item of evidence on the question of whether he was, in fact, an independent contractor or whether he was a mere agent, acting under the direction of the county authorities. It was also an important item of evidence on the question of the nature and scope of his duty to the public under the contract. In the *Grennell* case, the defendant contracted with the county authorities to make certain construction upon the highway. The performance of the contract would necessarily create a temporary nuisance upon the highway. It thereby became the duty of the public authorities to protect the public against the dangers of such nuisance by proper barriers and guards.. This duty was delegated to the defendant, and undertaken by him. The contract was evidence, therefore, of the nature and scope of his duty to the public. We held that he was an independent contractor, and that his breach of duty was a negligence for which he was liable, regardless of the exemption of the county from a like liability. Such is not the question involved in the case at bar. There is no con-

flict between the *Grennell* case and the case of *United States Fid. & Guar. Co. v. Iowa Tel. Co.*, 174 Iowa 476. Both opinions were written by the same justice.

It would extend this opinion to too great length to indulge in a review of authorities from other jurisdictions. The following authorities, however, will be found quite instructive: *Blochman v. Spreckels,* 135 Cal. 662 (57 L. R. A. 213); *Inge v. Board of Public Works,* 135 Ala. 187 (33 So. 678, 682); *McChesney v. People,* 200 Ill. 146 (65 N. E. 626); *Clatsop County v. Feldschau,* 101 Ore. 369 (199 Pac. 953); *Redditt v. Wall* (Miss.), 55 So. 45; *Moss v. Rowlett,* 112 Ky. 121 (65 S. W. 153 and 358); *Anderson v. Fuller,* 51 Fla. 380 (41 So. 684); *Crawford v. Ozark Ins. Co.,* 97 Ark. 549 (134 S. W. 951); *City of Kansas ex rel. Blumb v. O'Connell,* 99 Mo. 357 (12 S. W. 791); *Wade v. Gray,* 104 Miss. 151 (61 So. 168); *Fairmont Cement Stone Mfg. Co. v. Davison,* 122 Minn. 504 (142 N. W. 899); *United States Fid. & Guar. Co. v. Poetker,* 180 Ind. 255 (102 N. E. 372, L. R. A. 1917 B 984); *Corrigan Transit Co. v. Sanitary Dist.,* 137 Fed. 851 (70 C. C. A. 381); *Electric Appliance Co. v. United States Fid. & Guar. Co.,* 110 Wis. 434 (85 N. W. 648, 53 L. R. A. 609).

Without further elaboration, it is our conclusion that this plaintiff cannot maintain his action upon the bond in suit, and that the surety on this bond is not liable for the injury complained of. The judgment below is affirmed.—*Affirmed.*

ARTHUR, C. J., and PRESTON, STEVENS, and FAVILLE, JJ., concur.