## Joseph Lamma v. State of Nebraska.

Filed November 6, 1895. No. 6288.

1. **Arrest and Detention of Felons:** Homicide: Duty of Sheriff. A sheriff or other police officer, in arresting or preventing the escape of a felon, may use such force as is reasonably necessary, even to the taking of life; but if the felon can be taken, or his escape prevented, without killing the offender, and he be slain, the officer is guilty of at least manslaughter.

2. ———: ———: Evidence. *Held,* That a conviction of manslaughter is sustained by the evidence.

Error to the district court for Buffalo county. Tried below before Holcomb, J.

The facts are stated in the opinion.

*C. W. McNamar,* for plaintiff in error, in support of an argument that the evidence is insufficient to sustain the verdict, cited the following authorities : *Bruner v. State,* 58 Ind., 159; *Dressen v. State,* 38 Neb., 375; *State v. Dierberger,* 96 Mo., 667; *Jackson v. State,* 5 So. Rep. [Miss.], 690; Wharton, Criminal Law, sec. 933; *State v. Sloan,* 47 Mo., 604.

*F. G. Hamer* and *H. M. Sinclair,* also for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state:

The facts do not present a case of justifiable homicide. Under the evidence the plaintiff in error is at least guilty of manslaughter. (Wharton, Criminal Evidence, sec. 836; *United States v. Ross,* 92 U. S., 283; *Head v. Martin,* 3 S. W. Rep. [Ky.], 623; 2 Bishop, Criminal Law, 662, 663; *Commonwealth v. York,* 50 Mass., 93; *Clements v.*

*State,* 50 Ala., 117; *State v. Bland,* 97 N. Car., 438; *State v. McNinch,* 90 N. Car., 696.)

NORVAL, C. J.

An information in due form was filed in the district court of Dawson county by the county attorney, charging Joseph Lamma, the plaintiff in error, with murder in the first degree, for the killing of one George Rogers on the 1st day of November, 1892. To the charge the accused entered a plea of not guilty. A trial was had, and the jury being unable to agree they were discharged. Subsequently the place of trial was changed, on application of the prisoner, to Buffalo county. The accused was again placed upon trial in the last named county, which resulted in a conviction of manslaughter. The court overruled a motion for a new trial, and sentenced the prisoner to imprisonment in the state penitentiary for the period of eighteen months. He has prosecuted a petition in error to this court to obtain a review and reversal of this judgment. The petition in error contains eighteen assignments, but two of which are relied upon in the briefs for a reversal, which we will proceed to examine.

In the outset it should be stated that the killing is admitted. The defense interposed is justifiable homicide. It is argued that the court erred in failing to instruct the jury that the burden of proof was upon the state to establish that the homicide was not justifiable. There are two answers to this contention. In the first place, no request to charge the jury was submitted by counsel for the accused. Had such an instruction been tendered and refused, then the action of the trial court could have been reviewed. The question discussed is not presented by the record. Again, the court in its charge, after fully and fairly stating the rule of justifiable homicide as applicable to the facts disclosed by the evidence, told the jury if from the evidence they entertained a reasonable doubt of the

guilt of the defendant of either of the offenses charged in the information, it was their duty to return a verdict of acquittal, which direction was, in effect, that the burden was upon the state to prove that the killing was not justifiable, not by a preponderance of the evidence merely, but beyond a reasonable doubt. The instructions given fully covered the point.

The other assignment relied upon in the brief is that the evidence is insufficient to sustain the verdict. The record shows that the plaintiff in error at the time of the homicide was the deputy sheriff of Dawson county, and was in charge of four persons confined in the county jail. George Rogers, the deceased, was an inmate of the jail, awaiting trial on the charge of horse stealing. Joseph Smith was janitor at the court house, one of his duties being to carry the meals to the prisoners in the jail, which is in the basement of the court house. On the evening of the 1st of November, 1892, Smith carried to the jail the suppers for the prisoners, unlocked the door to the outside entrance to the jail, passed through the same and down a hall through a doorway to the right into a room about 14x17 feet, and from here to a grated door between this room and a large room termed the "cell room," where the prisoners were confined. The buckets containing the evening meals were set upon the floor near the side of this door, and Smith thereupon unlocked and opened the iron-grated door. Rummel, one of the prisoners, then came forward, and stooped down to get the meals, whereupon, Rogers, the deceased, jumped over Rummel, knocked Smith back against the wall, and ran towards the outside door, Smith crying, "Help! Help! Murder!" About the same instant Lamma reached the outside entrance to the jail from the street, and, observing Rogers coming, said "Halt! Halt!" and shot the deceased, the ball entering the left breast a little to the right and about two inches below the left nipple and lodging between the spine and the shoulder blade. From the effects of the

wound Rogers expired in a very few moments. The state introduced testimony tending to show that the prisoner Rummel, some hours before the killing, told the accused to keep a better watch upon Rogers as he was going to try to get away, and to this Lamma replied: "Let the son of a bitch come on. I want a shot at him." The only question presented is whether, under the foregoing facts, the plaintiff in error was justified in taking life in order to prevent the escape of the deceased.

The law governing the taking of human life by officers of justice is thus stated by Carlton, Homicide, section 528: "In cases of felony the killing is justifiable before an actual arrest is made, where in no other way the escaping felon can be taken. In such cases, that is to say in cases of felony, if the felon flees from justice, or if a dangerous wound be given, it is the duty of every man to use his best endeavors for preventing an escape; and if in the pursuit the felon be killed, when he cannot otherwise be taken, the homicide is justifiable; and the same rule holds if the felon, after being legally arrested, break away and escape. But if he may be taken in any case, without such severity, it is at least manslaughter in him who kills him; and the jury ought to inquire whether it was done of necessity or not." In *State v. Bland*, 97 N. Car., 438, the court say: "The law does not clothe an officer with the authority to judge arbitrarily of the necessity of killing a prisoner to secure him, or of killing a person to prevent a rescue of a prisoner. He cannot kill unless there is a necessity for it, and the jury must determine from the testimony the existence or absence of the necessity." (See, also, *Jackson v. State*, 66 Miss., 89; *Jackson v. State*, 76 Ga., 473; Crocker, Sheriffs, secs. 940, 941; Murfree, Sheriffs, secs. 11–64.) The rule deducible from the authorities is that a sheriff or other officer, in arresting or preventing the escape of a person charged with a felony, may use such force as is reasonably necessary, even to the taking of life;

but if the felon can be taken, or his escape prevented, without killing the offender, and he be slain, the officer is guilty of at least manslaughter. Applying this doctrine to the case at bar, can there be any room for doubt that the killing of Rogers was inexcusable? We think not. The deceased was within the walls of the jail and, so far as the evidence shows, was unarmed. His escape could have been prevented by Lamma by the closing of the outside door. While the deceased was called to "halt," the record fails to show that he did not comply with the request. For aught that appears in the testimony the fatal shot may have been fired after the deceased had stopped. It is also undenied that the accused had been apprised that Rogers was contemplating an escape. Lamma could have taken steps to have prevented his doing so by putting him in a cell, or otherwise securing him; but he did nothing of the kind. He should have exhausted every resource at his command to prevent the escape before taking human life. Upon this record we are fully satisfied that the jury were warranted in finding that the killing of Rogers was not justifiable. The judgment is

AFFIRMED.