VICTOR E. BROQUET V. STATE OF NEBRASKA.

FILED FEBRUARY 13, 1929. No. 26533.

*Perry, Van Pelt & Marti* and *J. F. Fults*, for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lester C. Dibble, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

GOSS, C. J.

Plaintiff in error, hereinafter called defendant, was charged with first degree murder. and was convicted of manslaughter. After sentence he comes here for review on errors assigned.

The homicide occurred in the village of Wilsonville August 13, 1927, at about 9 p. m. The defendant, Victor E. Broquet, was the village marshal. Bertram D. Wagner, who was killed, was a bricklayer. He was industrious, but when intoxicated was abusive. There was evidence that on previous occasions he had threatened the marshal and had used strong language against him. The marshal had never arrested him but had used restraint under provocation when Wagner was in a quarrelsome mood. On the night of the killing the marshal received a relayed telephone call to go to a house in the village where a woman had reported that a sick man was lying on the sidewalk. The marshal did not get these details, but received a call to go to that place. He went and found the man, who proved to be Wagner, intoxicated. He roused him and requested him to accompany him, but Wagner refused. The marshal entered the house and sent a telephone call to the county seat, requesting the sheriff to come. He then returned to Wagner who still refused to be arrested. Shortly the marshal left him, entered the house by a rear door, and then went to the telephone, which was near the front door, to find out whether

the sheriff had started. In the meantime a man and other women, having heard of the trouble, came to the house and the women entered the house. As the marshal was at the telephone they called that Wagner was coming in. They and the marshal at first evidently thought he was about to break into the front of the house, but he then learned the women were holding the back door and concluded Wagner was trying to enter there. The defendant thereupon went to the rear door, took his gun from his belt, left by the rear door, went around to the front of the house, and met Wagner, who was away from the house some distance, near the corner of the yard. As the marshal approached Wagner, he testified that Wagner started toward him, and, with an epithet, stated that he would cut the marshal's heart out before he would let him take him; that he had his hands up and moving "like a boxer would move his hands;" defendant "could not tell whether he had anything in his hands or not, but at that time I thought he had;" defendant never had any intention of killing Wagner, but when Wagner was at a distance of three to six feet defendant shot him in the neck, as a result of which he died. Defendant's gun was a 20 gauge, hammerless shotgun, with two barrels 10 inches long. It had a pistol grip with a conventional safety device on the top. The gun cannot be discharged unless this is "off safety." This is accomplished by pushing the slide up with the thumb of the hand that grips the stock.

Of the many errors assigned, those argued and relied on may be classified under these two points:

First. That the court erred in treating the manslaughter here involved as involuntary manslaughter.

Second. That the court erred in not allowing the defendant as an officer seeking to arrest the offender to be the judge as to the necessity of shooting.

Manslaughter is defined by our statute as follows (omitting the penalty):

"Whoever shall unlawfully kill another without malice, either upon a sudden quarrel, or unintentionally, while the

slayer is in the commission of some unlawful act, shall be deemed guilty of manslaughter." Comp. St. 1922, sec. 9546.

This degree of homicide lacks the elements of purpose, deliberation, premeditation and malice necessary to constitute murder in the first degree; and lacks the elements of purpose and malice to constitute murder in the second degree.

Manslaughter is therefore indicated when the homicide is not murder in the first or second degree and is unlawful, but is without malice and is committed on one of the two following described occasions: First, upon a sudden quarrel; or, second, unintentionally, while the slayer is in the commission of an unlawful act.

By the instructions, the court withdrew from the consideration of the jury the charges of murder in the first and second degree and submitted to the jury only the charge of manslaughter which was included in the aptly drawn complaint for murder in the first degree. In that paragraph of the instructions to the jury in which the court named the material elements the state must prove from the evidence beyond a reasonable doubt, this subparagraph is challenged by the defendant:

"That said killing was done unlawfully and either intentionally, upon a sudden quarrel; or unintentionally, while the defendant was in the commission of some unlawful act."

The verdict was a general one, finding the defendant guilty of manslaughter. The defendant assigns prejudicial error in submitting to the jury the question whether, at the time the slayer did the killing, he was in the commission of an unlawful act. This was the second or alternative point submitted to the jury in the subparagraph above quoted.

The specific withdrawal of the charges of murder in the first and second degrees, to which we have referred, was in line with our previous holdings, among which may be cited *Botsch v. State,* 43 Neb. 501; *Whitehead v. State,* 115 Neb. 143; and followed at this sitting in *Pembrook v. State,* 117 Neb. 759. The reason for the rule is that, where there is

no evidence to support a criminal charge, to submit to the jury the question of the guilt or innocence of the defendant on such a charge is calculated to confuse and mislead the jurors. It is therefore prejudicial to a party on trial on such a complaint, even though he may not have been found guilty on that particular charge but on another which may have been included in the information or indictment.

Defendant argues that the same principle is involved here because both occasions under which manslaughter may be committed were submitted to the jury; that there was no evidence that the defendant was engaged in an unlawful act when he slew the man he, as town marshal, was trying to arrest.

Ordinarily, when a police officer is tried for manslaughter while attempting an arrest, he is considered as charged only under the first phase of the manslaughter statute and the jury are instructed accordingly on the subject of intentional manslaughter only. That arises from the theory or fiction that the officer used more force than necessary and thus translated the legal act of arrest into an intentional homicide.

Seldom would an occasion arise such as here. The writer has never observed in practice or in the reports a like situation. The shooting occurred as we have described it. The record also shows that the defendant testified on his direct examination that he had no malice, did not intend to kill Wagner, and had no intention to use the gun except for the purpose of protecting himself from threatened danger; and on cross-examination he admitted that the gun was discharged, but testified that he "never noticed whether I had the gun in my hand any more than any one else or not; some one else might have had it at the same time for all I know," and that he could not say that he fired any gun at Wagner.

A defendant is entitled to have his theories and his defenses as reflected in the evidence submitted to the jury. If this one had not been submitted by the instructions, and

he had been convicted, he would have been here complaining. The learned trial judge took that view of it.

We therefore think that the court was justified in submitting to the jury the second phase of the statute on manslaughter, and that the rule may be stated in this way: Where an officer, in an attempt to arrest an intoxicated person, where it is not reasonably and apparently necessary, in all the circumstances, for an ordinarily prudent person to shoot such misdemeanant to effect his arrest, carries a loaded gun and discharges the gun without intention to shoot the misdemeanant, it is not error prejudicial to the defendant to submit to the jury the question whether the defendant is guilty of unintentional manslaughter while engaged in the commission of an unlawful act. This was the effect of the instruction given by the trial court. The defendant's rights were not prejudiced thereby.

The second proposition into which the assigned and argued errors group themselves is that the instructions of the court did not allow the defendant to be the judge of the necessity of shooting. Defendant may think this is a summary classification, but a careful comparison of the instructions requested and those given the jury shows that this is the only real and valid difference between them. The instructions given the jury by the court guarded the rights of the defendant most fairly and thoroughly, unless in this one point they failed.

Defendant quotes from 1 Michie, Homicide, 313, citing Hale:

"Where persons have a right to arrest and imprison, and, using the proper means, are resisted in so doing, they may repel force with force, and need not give back, and, if the party resisted is unavoidably killed in the struggle, this homicide is justifiable."

The state counters by continuing the quotation as follows:

"But although a peace officer in the discharge of his duty is protected while acting as an officer and within the law, he cannot take the life of a citizen unless necessity there-

for exists. Where the peace officer is in good faith attempting to arrest and the offender commits an overt act manifesting an intent to immediately resist, under such circumstances as are sufficient to create in the mind of a reasonable man a belief that the offender was about to immediately use a deadly weapon, the officer will be justified in firing first; *but a mere attitude of defiance, or preparation to resist, not amounting to an assault, especially in cases of misdemeanor, will not justify the killing.*" 1 Michie, Homicide, 313.

If a police officer were to be the sole final judge of the necessity of killing one who resisted arrest or who refused to submit to arrest, it would open the door to those officers, few they might be, who would use such a statement of the rule as a shield to homicides committed under the ægis of the law. The very statement of such a rule shocks one's consciousness of right and wrong.

That rule was expressly rejected in principle by this court in a manslaughter case, in which a deputy sheriff was convicted and the judgment was affirmed by this court, where this court quoted with approval the following from a case in another state:

"The law does not clothe an officer with the authority to judge arbitrarily of the necessity of killing a prisoner to secure him, or of killing a person to prevent the rescue of a prisoner. He cannot kill unless there is a necessity for it, and the jury must determine from the testimony the existence or absence of the necessity." *Lamma v. State,* 46 Neb. 236.

Many authorities might be cited to sustain this rule which, to make it applicable to the facts here, may be stated as follows: A police officer, in arresting one who is guilty of a misdemeanor, may use such force as, to an ordinarily prudent person, appears reasonably necessary under the circumstances, even to the taking of life; but, if the officer slay the offender while effecting his arrest, the question as to whether he used more force than was, under the

circumstances, reasonably necessary is a question for the jury to determine from the evidence.

Under the authority of section 10186, we do not think any "substantial miscarriage of justice has actually occurred," and that the judgment is for affirmance. The defendant was sentenced to three years in the penitentiary. The testimony of several good-character witnesses showed that he had always borne a good reputation. There was that in the evidence which indicated that he lacked the poise and character necessary to carry out the situation in which he was placed. He was excited and confused by the actions of the deceased on the one hand and by his duty to protect the women under his charge as an officer on the other. He did not get out his gun until he left the telephone to go to the deceased for the third and fatal time. We doubt if he knew when he took the gun from his belt and we credit his testimony that he did not know whether he or some one else did the shooting. We think that the ends of society will be served and the law vindicated by a shorter sentence than that imposed by the court and that it should be reduced to one year.

For the reasons stated in the opinion, the judgment of the trial court is affirmed in all respects save that the sentence imposed on the defendant is so modified that the defendant shall serve a term of one year.

AFFIRMED: SENTENCE MODIFIED.